UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| SUCCESS SYSTEMS, INC. )<br>)<br>    Plaintiff, )<br>)<br>)<br>v. )<br>)<br>MADDY PETROLEUM )<br>EQUIPMENT, INC., )<br>)<br>    Defendant. )<br>) | CIVIL CASE NO.:<br>3:01CV1343(MRK)<br><br><br><br>January 21, 2004 |

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF
### MOTION TO VACATE AND/OR MODIFY AAA ARBITRATION AWARD

Pursuant to §10 of the Federal Arbitration Act (the "FAA"), Plaintiff Success Systems, Inc. ("Success") hereby submits this Memorandum in support of its Motion to Vacate and/or Modify an arbitration award issued by the American Arbitration Association ("AAA") (Arbitrator Ernest Fanwick, Esq.) on December 22, 2003 (the "Award") against Defendant Maddy Petroleum Equipment, Inc. ("Maddy").[1] Success files along herewith the Affidavit of Joseph M. Pastore III, Esq. ("Pastore Aff.") with supporting exhibits.

### PRELIMINARY STATEMENT

This is a very clear case warranting vacatur and/or modification of an arbitration award. The issues presented are very basic and elementary.

In this case, the Arbitrator found two separate breaches by Maddy of the distributor contract at issue (the "Contract"). (Award p.4.) The Arbitrator also rejected Maddy's countervailing claims of breach in their entirety. Despite these findings, the Arbitrator then failed to award *any* attorneys' fees to Success in complete disregard of the Contract's express

---

[1] A true and correct copy of the Award is provided at Pastore Aff, Exhibit A.

HARTFORD 82104v2

terms mandating such fees upon "any breach." (Contract §20.) The Arbitrator provided no explanation for such a bizarre ruling. Accordingly, this Award must be vacated or modified.

First, the Arbitrator found a breach of the Contract by Maddy for its failure to pay Success certain fees under the Addendum to the Contract entitled: "Platinum Distributor – Inventory Commitment Payment Modification." (Contract §11.) As to this breach for non-payment, the Arbitrator ruled as follows:

> The Claimant [Maddy] is to *pay* to the Respondent [Success] $10,000 still due as part of the initial payment plus interest on any unpaid balance at 3% per annum from March 1, 2000 to date of payment or December 31, 2003, whichever occurs first.

(Award p.4.) (Emphasis added.)

As a result, Maddy is obligated to pay Success attorneys' fees associated with this breach under Section 20 of the Contract, which provides that:

> Distributor [Maddy] *shall* indemnify Licenser [Success] *fully* for any cost, liability, or harm suffered by Licenser, including reasonable *attorney fees*, as a direct or indirect result of Distributor's *breach* of *any* of the *terms* of this Agreement.

(Contract §20) (Emphasis added.) This language does not simply "permit" the recovery of attorneys' fees. Rather, it expressly requires that attorneys' fees "*shall*" be awarded upon "*any*" breach. There is no other interpretation.

Second, the Arbitrator also found that Maddy was contractually obligated to return certain materials that Success provided to Maddy as distributor of Success' software products and systems (the "Confidential Materials"). (Contract §15.) As to this issue, the Arbitrator ruled as follows:

> The Claimant [Maddy] was *contractually obligated* to *return* certain materials to the Respondent [Success] upon termination

2

HARTFORD 82104v2

> of the contract. Testimony indicated that upon termination the material then in possession of the Claimant was placed in a file and returned in April 2001. While the Contract did not specify a time limit for the return of the materials it did state that the material was to be returned upon ***request***.[2]

(Award p.4.) (Emphasis added.)

Section 17 of the Contract provides, in relevant part, that Success must recover its attorneys' fees if it has "any basis" to believe that company Materials that it deems to be confidential are at risk of misuse or misappropriation:

> Should Licenser [Success] have ***any basis*** to seek such legal or equitable action…, Distributor [Maddy] ***shall*** pay ***any*** and all ***attorney fees*** and court costs that Licenser may incur.

(Contract §17) Again, this language does not simply "permit" the recovery of attorneys' fees. Rather, it expressly requires that attorneys' fees "***shall***" be awarded in the event Success had "***any***" basis to seek legal action for the protection and return of its Confidential Materials.

As discussed more fully below, Success had more than just "any basis" by which to pursue the Arbitration and the related Federal Action for the return of the Materials. While the Arbitrator found that Success was not damaged as a result of the delay in returning the Materials, Success certainly had at a minimum of good faith a "basis" to seek to protect and compel the return of these Materials. Success only obtained the Materials back (a year late) because it filed suit to compel their return. There is no other interpretation.

The Arbitrator's refusal to award attorneys' fees is without any logic or explanation in his 5 page decision. It is unjust and unfair given the expense that Success incurred in proving

---

[2] Success made various requests for the return of the Confidential Materials upon termination of the Contract in March of 2000 and thereafter. (Pastore Aff. Exhibits H and I.) The testimony revealed that Maddy held these proprietary Materials hostage for over 1 year. (Pastore Aff. ¶10.)

3

HARTFORD 82104v2

breach and retrieving its Materials. If ever there was a manifest disregard of the facts and law, this is the situation.

There is also another critical error in the Award. The Arbitrator found that Maddy must return certain Materials to Success, and that Maddy has not returned all of these Materials. (Award p.4.) Despite these findings, the Arbitrator then failed to impose a continuing duty upon Maddy to return these Materials in the Award. Accordingly, the Award must be modified to formally impose upon Maddy a continuing obligation to return the Materials that it admits, and the Arbitrator found, have not yet been returned. This oversight clearly highlights the cavalier disregard the Arbitrator had for Success' efforts to preserve and safeguard its business Materials. Accordingly, the Motion to Vacate and/or Modify must be granted in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.    The Contract**

By way of background, this case centers on the point of sale ("p.o.s.") software system business. Success is a leading author and vendor of these p.o.s. software systems nationwide.

On or about October 13, 2000, Success and Maddy entered into the Contract known as the "Sales Distributor Agreement", whereby Maddy agreed to use its best efforts to market and distribute the p.o.s. software products created by Success that facilitate inventory control, cash management, financial record-keeping and point-of-sale communication functions for gasoline retail outlets and other customers.[3] Maddy was to act as a distributor by soliciting customers and/or end-users to enter into license agreements for the software provided by Success.

---

[3] A true and correct copy of the Contract is provided at Pastore Aff., Exhibit B. The Contract at issue states that "[t]he arbitration shall be conducted pursuant to the terms of the Federal Arbitration Act [and] the Commercial Arbitration Rules of the American Arbitration Association." (Contract §16.)

4

HARTFORD 82104v2

**B.     Non-Payment**

Under the Contract, Maddy was required to pay Success $30,000 in the form of non-refundable Inventory Commitment Fees to secure the rights to market the Success-owned software to the customer and/or end-user. In exchange, Maddy received "Platinum Distributor" status that gave Maddy the benefit of a 40% discount on any and all inventory purchased as well as additional support and/or maintenance services. Although Success satisfied all of its obligations on the Contract, Maddy only paid a portion the required $30,000 in fees.

Accordingly, the Arbitrator found a breach of the Contract by Maddy for non-payment of these fees. (Award p.4.)

**C.     The Confidential Materials**

As part of the Contract, Success provided Maddy with its most confidential and proprietary business materials in order to assist Maddy in the distribution of the Success products.[4] After the Contract was terminated, however, Maddy held these Confidential Materials hostage and unlawfully for over 1 year. (Pastore Aff ¶10.) Maddy did so despite Success' clear demands for the return of the Confidential Materials and express provisions of the Contract requiring their immediate return upon any termination. (Contract §§13 and 15.)

Maddy flatly conceded at the hearings that the company held the Confidential Materials as "leverage" for an entire year after the Contract was terminated and over the demands of Success. (Pastore Aff.¶ ¶10, 15 Exhibit G, H, I.) Maddy admitted that the Materials were returned during the lawsuit brought by Success to recover the Materials. The Award reflects

---

[4] The Materials at issue included the following: (i) Success' *software* and related systems and products; (ii) Success' *client lists*, contact information and other business *leads*; (iii) Success' *price lists* and other pricing information; (iv) Success' educational, *training* and administrative *manuals*, including the "Sales Resource Guide"; (v) Success' *memoranda* and notes related to its business; (vi) Success' *records* and *drawings*; and (vii) Success' *discs* and other valuable data/materials pertaining to its business. (Copies of those Materials were eventually returned by Maddy provided as Exhibit 10 to the hearings.)

5

HARTFORD 82104v2

these facts as follows: "[t]he Claimant [Maddy] was ***contractually obligated*** to ***return*** certain materials to the Respondent [Success] upon termination of the contract." (Award p.4.) At the hearings, Maddy also conceded that it was working with Success' competitor, CMI Solutions, Inc. ("CMI"), in soliciting Success' customers during the very time it held the Confidential Materials hostage. (Pastore Aff. ¶15.)

Success initially brought the action in Federal Court to seek a remedy for the misappropriation of its trade secrets and to demand that the Confidential Materials be returned. (A copy of the Complaint in the Federal Court action (the "Federal Action") that became the Arbitration is provided at Pastore Aff., <u>Exhibit C</u>.) This Court determined that the AAA should review the arbitrability of Success' claim.

It was also discovered at the hearings that Maddy somehow misplaced the original version of Success' disc containing various "Sales Tools" and other trade secrets of Success, and had only returned an unauthorized copy of the Success disc (the "Missing Disc"). (Pastore Aff. ¶19.) Success testified that this Material constitutes its most important trade secrets and proprietary information. (Pastore Aff. ¶19.) The Missing Disc has yet to be returned. (Pastore Aff. ¶19.) Despite this fact, and the value of this Disc to Success' business, the Arbitrator somehow found that: "no damages were proven by a preponderance of he [sic.] evidence based upon the retention of the material for the extended period." (Award p.4.)

It is crucial to understand, however, that Success was placed in the position of having to commence the Federal Action (that became the Arbitration) for the return of the Materials, and as importantly, to ascertain Maddy's unlawful use of the Materials and corresponding damages. Success had ***no*** choice but to incur the legal fees in order to obtain the Materials back. Success would never have incurred these fees had Maddy returned the Confidential Materials in the first

6

place. (Copies of Success' redacted legal bills are provided at Pastore Aff. ¶16, Exhibit E as updated through November 18, 2003). Certainly, Success had "a basis" for bringing the claim and Success suffered its attorneys' fees in pursing the claims in Court, and then in the Arbitration.

**D.    The Hearings**

The hearings in this matter were held on October 27, 28 and 29, 2003 before the Arbitrator Ernest Fanwick, Esq.[5] Success served a pre-hearing brief and a post-hearing brief. It made these elementary points under the Contract painstakingly clear. It is almost *so* basic that one might not consider writing "if a contract says shall, it means shall," but Success spelled it out as clear as day at the Arbitration. The Arbitrator simply disregarded it. (A copy of the Pre- and Post-Hearing briefs are provided respectively at Pastore Aff., Exhibits E and F.)

Further, Success testified as to the mandatory nature of attorneys' fee provisions in the contract. (Pastore Aff.¶16.) The Arbitrator disregarded this testimony. He disregarded all of this without any explanation.

## ARGUMENT

**POINT I.    THE AWARD MUST BE VACATED AND/OR MODIFIED TO REFLECT <u>A REASONABLE AMOUNT OF ATTORNEYS' FEES TO SUCCESS.</u>**

**A.    *<u>The FAA Applies To This Dispute.</u>***

"The FAA , 9 U.S.C. §10(a), governs this Court's authority to vacate arbitration awards." <u>Intercity Company Establishment v. Ahto</u>, 13 F. Supp. 2d 253, 258 (D.Conn 1998). That is, "the FAA governs any arbitration agreement 'involving commerce.'" <u>Hottle v.</u>

---

[5] Success pursued claims against Maddy for damages based on: (i) Breach of Contract; (ii) violation of The Connecticut Unfair Trade Practices Act ("CUTPA"); and (iii) Misappropriation of Trade Secrets in violation of The Connecticut Uniform Trade Secrets Act ("CUTSA"). Success' Answering Statement and Counterclaims are provided at <u>Exhibit D</u>.

7

Siedman, 74 Conn.App. 271, 276 (2002); *See also* 9 U.S.C. §1 (defining "commerce" to include "commerce among the several states"). As the Contract at issue clearly evidences interstate commerce, the FAA applies to this Motion to Vacate and/or Modify. Moreover, the Contract expressly states that "[t]he arbitration shall be conducted pursuant to the terms of the Federal Arbitration Act." (Contract §16.)

    **B.**    *The Grounds For Vacatur Under The FAA And Common Law Provide For the Relief Sought Here.*

The grounds for vacatur of an arbitration award are set forth at Section 10 of the FAA. 9 U.S.C. §10(a). Intercity Company Establishment v. Ahto, 13 F. Supp. 2d 253, 258 (D.Conn 1998); Hoeft v. MVL Group, Inc., 343 F.3d 57 (2d Cir. 2003.) Of the many grounds listed, vacatur is appropriate "where the arbitrators exceeded their powers" and/or "imperfectly executed them." 9 U.S.C.§10(a)(4).

"[I]t is well established that these statutory grounds [as set forth in the FAA] are not exhaustive." Wallace v. Buttar, 239 F.Supp.2d 388, 392 (S.D.N.Y. 2003). That is, "[t]he federal courts, including those of the Second Circuit, recognize two additional bases for vacating arbitration awards: manifest disregard of the *law* and manifest disregard of the *facts*." Id. (emphasis added). "The fact that the manifest disregard standard is a product of *common law*, rather than statute, makes it no less essential to the judicial review of arbitration awards." Hoeft v. MVL Group, Inc., 343 F.3d 57 (2d Cir. 2003).

    **C.**    *The Arbitrator Acted In Manifest Disregard Of The Law.*

To prevail under the manifest disregard of the law standard, the party seeking vacature must demonstrate that the arbitrator was fully aware of a clearly defined governing legal principle, but refused to apply it. Duferco International Steel Trading v. T. Klaveness Shipping

A/S, 333 F.3d. 383 (2d Cir. 2003).[6] For example, this standard will be met if the moving party can show that the arbitrator "understood and correctly stated the law, but [then] proceeded to ignore it." Wallace, *supra* at 392.

Under Connecticut law, as elsewhere, the right to contract for attorneys' fees is well recognized as follows:

> Further, a court has **no authority** to **disregard** a **contractual provision** for an **attorneys' fee**, and must limit its determination to the reasonableness of the amount requested.

Alpine Construction, Inc. v. McGill, 1992 Conn. Super. Lexis 1137 *4 (1992) (emphasis added) *citing* Pacelli Bros. Tran. Inc. v. Pacelli, 189 Conn. 401, 415 (1983) ("the provision for a reasonable attorney's fee was an integral part of the note and, like any other clause determining the amount due, could not be disregarded"); *see also* United States v. One Parcel, 1999 U.S. Dist. Lexis 10522 *16 (D.Conn.1999) ("a successful litigant is **entitled** to an award of attorneys' fees if they are expressly provided by a contract").

Connecticut courts have also stated that:

> We agree with the Plaintiff that in light of the clear terms of the agreement, **once** the court found that the plaintiff was entitled to payment of the additional rent under the lease…reasonable attorneys' **fees** were **due**.

Putnam Park Assoc. v. Fahenstock & Co., 73 Conn.App. 1, 16 (2002) (emphasis added). Once the Arbitrator here found a breach of the Contract by Maddy, he was then obligated to award attorneys' fees against Maddy under the Contract. (Contract §§20 and 17.)

Success provided ample evidence of its legal position as follows:

> The Arbitrator informed the parties during the hearings that attorneys'

---

[6] This analysis requires the moving party to demonstrate: (1) that the principal of law was clear and applicable; (2) that the law was improperly applied leading to an erroneous outcome (that cannot be justified on any other ground); and (3) that the arbitrators were aware of the law or, alternatively, that the error was so obvious that it would have been perceived by the average person qualified to serve as an arbitrator. Id.

9

HARTFORD 82104v2

> fees may be awarded in this case under the AAA Commercial Rules of Arbitration. Section 20 of the Contract is clear and unambiguous. It demands that Maddy pay the attorneys' fees of Success in the event of *"any"* breach of the Contract. As Maddy has flatly admitted to a breach of the Contract at §15 – for refusing to return the Confidential Materials for over 1 year – there is no question that attorneys' fees must be awarded to Success in this case.

(Pastore Aff., Exhibit F, Success Post-Hearing Brief p.27.) Success emphasized in the briefs the *mandatory* nature of the attorney fee clauses at §20 and §17. (Pastore Aff., Exhibit F, Success Post-Hearing Brief p.27-29; Pastore Aff., Exhibit E, Success Pre-Hearing Brief p.3, 19-21.)

Here, the Arbitrator recognized the law at the outset of the hearings. He stated that he was empowered to award attorneys' fees under the AAA Commercial Rules. (Pastore Aff. ¶9.) *See* Rule 43 of AAA Commercial Rules. Despite his recognition of the law, he then ignored the law and the Contract's mandatory provisions for attorneys' fees. Accordingly, Success' Motion to Vacate and/or Modify the Award must be granted.

### D. *The Arbitrator Manifestly Disregarded The Facts.*

The Federal Courts have expressly considered the "manifest disregard of the facts" as a basis for vacatur of an award. Pacific Reinsurance Mangmt Corp. v. Ohio Reinsurance Corp., 935 F.2d 1019 (9th Cir.1991). In limited situations, "a court may vacate an award because arbitrators have manifestly disregarded the evidence." McDaniel v. Bear Stearns, 196 F. Supp.2d 343 (S.D.N.Y 2002). Under the relevant standard, a "manifest disregard of the *facts*" occurs when the award runs contrary to *strong evidence* favoring the moving party on a motion to vacate. Wallace, 239 F.Supp.2d at 393.

The Contract was an exhibit to the Arbitration, and thus clear evidence, that the Arbitrator ignored. The Arbitrator also disregarded the legal bills that Success submitted as an exhibit. He did this despite a finding of breach, and despite the fact that he was well-aware that

10

Contract §20 requires an award of attorneys' fees upon "any breach". (Contract §20.) The Arbitrator also ignored the fact that Contract §17 also provides that attorneys' fees must be awarded where there is "***any basis***" for Success bringing an action related to the confidentiality provisions of the Contract. Clearly, Success had a bona-fide basis to bring the Federal Action and these claims for the return of the Confidential Materials that Maddy held hostage for over 1 year. It had no other choice.

There is no way the Arbitrator could have missed these issues. Success presented them numerous times in very simple fashion. The Pre-Hearing Brief is very clear:

> Importantly, the attorneys' fees clause at Contract §17 provides that attorneys' fees must be awarded where there is "***any basis***" for Success bringing an action related to the confidentiality provisions of the Contract at §13. Clearly, Success had a bona-fide basis to bring the Federal Action and these claims for the return of the Confidential Materials that Maddy held hostage for over 1 year. Success had no choice in the matter, as Maddy was unlawfully holding Success' most vital and confidential business materials.

( Pastore Aff., Exhibit E, Success Pre-Hearing Brief p. 20.)

The Post-Hearing Brief is also very clear:

> Maddy has already conceded liability in this case to a breach of the Contract at §15, as Maddy refused to return the Confidential Materials for over 1 year despite the demands of Success and the requirement of Contract §15 for the immediate return of the Confidential Materials upon any termination. It is noteworthy that Maddy returned the Confidential Materials only *after* Success commenced the action for their return, and only after Success incurred legal fees along the way. As such, attorneys' fees must be awarded to Success under the Contract at §20.

(Pastore Aff., Exhibit F, Success Post-Hearing Brief p.28.) Despite this abundance of evidence and information, the Arbitrator ignored these facts without explanation.

The Arbitrator also found that Success failed to prove damages beyond a "preponderance of the evidence" as to the return of the Confidential Materials. (Award p.4.)

11

HARTFORD 82104v2

Of course, the point is that the attorneys' fees incurred in connection with Success' efforts to recapture its business Materials are part of the damages. Success made this point clear. (Pastore Aff., Exhibit F, Success Post Hearing Brief p.28.) The Arbitrator ignored this fact as well.

If this ruling were allowed to stand, the following scenario would become fair game: *A party could violate a contract by unlawfully refusing to return chattel, materials etc., force the other party to bring suit to obtain it back... whereupon the other party would finally surrender the materials after vigorous litigation...and then claim the costs of that litigation are not its fault.* This is an outrage.

When Success signed up Maddy as a distributor, the parties bargained for certain mandatory and non-refundable start-up fees. That was their deal. The Arbitrator flatly recognized this part of the bargain when he found Maddy liable for such Inventory Commitment Fees. The Arbitrator then ignored an equally important part of the bargain concerning Success' rights to protect itself from the resulting costs of breach and misuse of business materials. Accordingly, the Arbitrator's manifest disregard of both the law and facts must be vacated by this Court.

    E.    ***The Arbitrator Failed To Explain The Irrational Decision On Attorneys' Fees.***

The Second Circuit has also observed that:

> "[w]e want to make clear that we are not holding that arbitrators should write opinions in every case or even in most cases. We merely observe that where a reviewing court is inclined to find that the arbitrators manifestly disregarded the ***law*** or the ***evidence*** and that an explanation, if given, would have strained credulity, the ***absence of explanation*** may reinforce the reviewing court's confidence that the arbitrators engaged in ***manifest disregard***."

HARTFORD 82104v2

Halligan v. Piper Jaffrey, 148 F.3d 197 (2d Cir. 1998). Despite a 5 page decision, the Arbitrator provided absolutely no logic for this decision. Here, there is *no* rational explanation for the Arbitrator's refusal to award attorneys' fees. Accordingly, the Award must be vacated or modified to reflect a reasonable amount of attorneys' fees to Success.

  **F.** *<u>Success Presented Evidence Of Its Attorneys' Fees.</u>*

Success incurred substantial attorneys' fees in defending against Maddy's claims and prosecuting its claims for breach and return of the Confidential Materials. These attorneys' fees now total approximately $132,000 and continue to escalate. (Pastore Aff. ¶16.)

These attorneys' fees were incurred by Success as a result of: (i) the filing of the Federal Action to receive the Confidential Materials; (ii) the filing of its Counterclaims in the Arbitration to receive the Confidential Materials; (iii) the prosecution of those actions for breach of Contract associated with the unpaid fees; (iv) the prosecution of those actions seeking the return of the Confidential Materials and to ascertain any damages for their unlawful use; (v) the participation in the Arbitration hearings; (vi) the corresponding briefing of the claims in the Arbitration; and (vii) all efforts to recover the attorneys' fees and the business Materials that Success is entitled to under the Contract. (Pastore Aff. ¶ 17, <u>Exhibit D</u>)

Success made perfectly clear to Maddy throughout the course of this dispute and well prior to commencing any litigation that it believed Maddy was in breach and that it would take all steps necessary to obtain its Materials. These points were reinforced to the Arbitrator. For example, Success presented the following letter sent nearly several months prior to the filing of the Federal Action as an exhibit to the hearings:

> It has come to our *attention* that Maddy Petroleum is marketing the products of *CMI* Solutions…Maddy Petroleum has retained highly confidential materials containing trade secrets as defined above, which were provided to them in connection with the Distribution Agreement.

13

HARTFORD 82104v2

> Maddy Petroleum has refused to return these materials. Moreover, we have reason to be concerned that Maddy Petroleum may be violating its *confidentiality* obligations in its marketing of CMI products. Please be advised that to the extent this proves to be the case, we will seek all legal remedies available including pursuit of any valid claims against Maddy Petroleum and against CMI for interference with the contractual relationship between Maddy Petroleum and Success Systems.

(Pastore Aff. ¶14, Exhibit H) (Emphasis added.) Success presented several additional letters to the Arbitrator demonstrating that it duly demanded the return of those Materials. (Pastore Aff.¶ 14, Exhibit I.)

The Arbitrator simply failed to understand that there are costs to force compliance with the Contract. Of course, this ruling cannot withstand any scrutiny. Accordingly, this Court must vacate and/or modify the Award to provide Success with its attorneys' fees in the amount provided at the Arbitration.

### G.    *The Arbitrator Failed To Award The Injunctive Relief Sought.*

In its Answering Statement and Counterclaims, Success specifically requested an order requiring Maddy to return any and all of the Confidential Materials that it had in its possession. (Pastore Aff. ¶19, Exhibit J, Counterclaims p.9) As set forth above, it was demonstrated at the hearings that Maddy continued to retain the Missing Disc, a valuable and proprietary tool to Success' business. (Pastore Aff. ¶19.)

Although the Arbitrator did find that Maddy was "contractually obligated" to return any Success Materials, the Arbitrator then failed to issue an appropriate order in the Award mandating a continuing obligation on Maddy to return any materials, including the Missing Disc. As such, the Award must be vacated and/or modified to reflect such an order. This oversight again demonstrates the Arbitrator's cavalier approach to Success' claims and only highlights his disregard for the law and facts with respect to attorneys' fees.

HARTFORD 82104v2

## CONCLUSION

For the foregoing reasons, Plaintiff Success respectfully requests that its Motion to Vacate the Award be granted. Success requests that the Court

(1) Order that its complete and full attorneys' fees (to be supplemented in connection with the instant motion) be included and made a part of the Award; or

(2) Order that this Court conduct a hearing to determine the attorneys' fees (to be supplemented in connection with the instant motion) be included in any Judgment finally entered on the Award; or

(3) Order that the parties submit to new AAA hearings such that its complete and full attorneys' fees (to be supplemented in connection with the instant motion) be included and made a part of any Award; and

(4) Order that the Award be modified to impose upon Defendant Maddy Petroleum Equipment, Inc. a continuing obligation to return to Success any business Materials provided by Success in connection with the Contract as defined herein.

Dated at Hartford, CT  
January 21, 2004

THE PLAINTIFF,  
SUCCESS SYSTEMS, INC.

By: _____  
Joseph M. Pastore III, Esq.  
Thomas J. Lengyel, Esq.  
BROWN RAYSMAN MILLSTEIN  
FELDER & STEINER, LLP  
CityPlace II, 185 Asylum Street  
Hartford, CT 06103  
Telephone: (860) 275-6400  
Facsimile: (860) 275-6510  
\*   \*   \*  
900 Third Avenue  
New York, NY 10022

15

HARTFORD 82104v2

## CERTIFICATE OF SERVICE

    This is to certify that a copy of the foregoing was sent via first class mail, postage pre-paid, on January 21, 2004 to the following counsel of record:

Warren Holcomb, Esq.
Berchem, Moses & Devlin, P.C.
75 Broad Street
Milford, CT 06460

By: /s/ Thomas J. Lengyel
Thomas J. Lengyel

16

HARTFORD 82104v2