UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| SUCCESS SYSTEMS, INC.<br>     Plaintiff,<br><br>v.<br><br>MADDY PETROLEUM<br>EQUIPMENT, INC.,<br>     Defendant. | CIVIL CASE NO.:<br>3:01CV1343(MRK)<br><br>January 21, 2004 |

## AFFIDAVIT OF JOSEPH M. PASTORE III

I, Joseph M. Pastore III, hereby depose and say:

1. I am over the age 18 years.

2. I am a partner at Brown Raysman Millstein Felder & Steiner, LLP ("Brown Raysman"). Brown Raysman has been retained to represent Plaintiff Success Systems, Inc. ("Success") in the above-captioned matter against Defendant Maddy Petroleum Equipment, Inc. ("Maddy").

3. I make this Affidavit in support of Success' Motion to Vacate and/or Modify an arbitration award issued by the American Arbitration Association ("AAA") (Arbitrator Ernest Fanwick, Esq.) on December 22, 2003 (the "Award"). (A true and correct copy of the Award is provided at <u>Exhibit A</u>.)

4. I have personal knowledge and am familiar with the testimony and exhibits as described herein that were presented at the Arbitration at issue.

5. The case arises out of a contract entered into between the parties on or about October 13, 2000, known as the "Sales Distributor Agreement", whereby Maddy agreed to use

its best efforts to market and distribute certain software products and systems created by Success. (A true and correct copy of the Contract is provided at Exhibit B.)

6. Under the Contract, Maddy was required to pay Success $30,000 in the form of non-refundable Inventory Commitment Fees to secure the rights to market the Success-owned software to the customer. The Arbitrator found a breach of the Contract by Maddy for its failure to pay Success these fees under the Addendum to the Contract entitled: "Platinum Distributor – Inventory Commitment Payment Modification." (Award p.4.)

7. As to this breach for non-payment, the Arbitrator ruled as follows:

> The Claimant [Maddy] is to **pay** to the Respondent [Success] $10,000 still due as part of the initial payment plus interest on any unpaid balance at 3% per annum from March 1, 2000 to date of payment or December 31, 2003, whichever occurs first.

(Award p.4.) (Emphasis added.)

8. As a result of this breach, Maddy is obligated to pay Success attorneys' fees associated with this breach under Section 20 of the Contract, which provides that:

> Distributor [Maddy] **shall** indemnify Licenser [Success] **fully** for any cost, liability, or harm suffered by Licenser, including reasonable **attorney fees**, as a direct or indirect result of Distributor's **breach** of **any** of the **terms** of this Agreement.

(Contract §20) (Emphasis added.)

9. The Arbitrator announced at the outset of the hearings that he believed he was empowered to award attorneys fees under the AAA rules as the parties specifically provided for them under the Contract. Despite this knowledge, evidence and testimony, the Arbitrator failed to award any attorneys' fees to Success. (Award p.4.) He did so even though Success submitted a Pre-Hearing Brief and a Post-Hearing Brief that emphasized the mandatory nature

2

of the attorney fees provision at Contract §20. (A copy of the Pre- and Post-Hearing briefs are provided respectively at <u>Exhibits E and F</u>.)

10. As part of the Contract, Success provided Maddy with its most confidential and proprietary business materials in order to assist Maddy in the distribution of the Success products (the "Confidential Materials"). After the Contract was terminated, however, Maddy held these Confidential Materials unlawfully for over 1 year. This testimony was established at the hearings by Success, and further supported by the Deposition of Mr. Edward Bletz ("Bletz Dep."), System Specialist at Maddy. (True and correct copies of the relevant portions from the Bletz Deposition are provided at <u>Exhibit G</u>.) Mr. Bletz testified that Maddy held the Materials for over 1 year. (Bletz Dep. p.42.)

11. As a result, the Arbitrator also found that Maddy was contractually obligated to return the Materials that Success provided to Maddy as distributor. (Contract §15.) As to this issue, the Arbitrator ruled as follows:

> The Claimant [Maddy] was **contractually obligated** to **return** certain materials to the Respondent [Success] upon termination of the contract. Testimony indicated that upon termination the material then in possession of the Claimant was placed in a file and returned in April 2001. While the Contract did not specify a time limit for the return of the materials it did state that the material was to be returned upon **request**.

(Award p.4.) (Emphasis added.)

12. Section 17 of the Contract provides, in relevant part, that Success must recover its attorneys' fees if it has "any basis" to seek legal action as follows:

> Should Licenser [Success] have **any basis** to seek such legal or equitable action…, Distributor [Maddy] **shall** pay **any** and all **attorney fees** and court costs that Licenser may incur.

3

(Contract §17). Although testimony was presented that Success certainly had a basis to bring legal action for the return of the Materials, the Arbitrator again disregarded Contract §17 by failing to award any attorneys' fees to Success.

13. Success testified that it was forced to file a Federal Court action (the "Federal Action") for the return of the Materials. (A true and correct copy of the Complaint in the Federal Action that ultimately became the Arbitration is provided at <u>Exhibit C</u>.) (A true and correct copy of Success' Answering Statement and Counterclaims in the Arbitration is provided at <u>Exhibit J</u>.)

14. Success also presented testimony at the hearings that it made various requests for the return of the Confidential Materials upon termination of the Contract in March of 2001 and thereafter. (Copies of Success' correspondence in this regard is provided at <u>Exhibits H and I</u>.)

15. At the hearings, Maddy flatly admitted that the company held the Confidential Materials as "leverage" for an entire year after the Contract was terminated and over the demands of Success. Maddy further admitted that the Materials were returned during the Federal Action to recover the Materials. The truth of my recollection of this testimony is again supported by consistent testimony provided Mr. Beltz at his deposition in this case. <u>See</u> Exhibit G page 42. Maddy also admitted at the hearings that it was engaged in business with a Success competitor, CMI Solutions, Inc., while it wrongfully held the confidential materials. The truth of my recollection of this testimony is again supported by consistent testimony proved Mr. Beltz at his deposition in this case. See Exhibit G page 44-46.

16. At the hearings, Success submitted its legal bills in this matter totaling approximately $132,000. (Copies of Success' redacted legal bills are provided at <u>Exhibit E</u> as

4

updated through November 18, 2003). Despite the plain contractual language, the Arbitrator failed to award any attorneys' fees to Success. These fees continue to accrue. Success made clear throughout these proceedings that these fees must be awarded under §17 and §20 of the Contract. In fact, Success' pre-hearing and post-hearing brief both make this very clear. See Exhibits E and F pages 3, 19-21 in Exhibit E and pages 27-29 in Exhibit F.

17.    Success testified that these attorneys' fees were incurred by Success as a result of: (i) the filing of the Federal Action to obtain the Confidential materials; (ii) the filing of its Counterclaims in the Arbitration to obtain the Confidential materials; (iii) the prosecution of those actions for breach of contract associated with the unpaid fees; (iv) the prosecution of those actions seeking the return of the Confidential Materials and to ascertain any damages for their unlawful use; (v) the participation in the Arbitration hearings; (vi) the corresponding briefing of the claims in the Arbitration; and (vii) all efforts to recover the attorneys' fees and the business Materials that Success is entitled to under the Contract.

18.    Accordingly, Success moves to vacate and/or modify the Award to reflect a reasonable amount of attorneys' fees to Success.

19.    In its Answering Statement and Counterclaims, Success specifically requested an order requiring Maddy to return any and all of the Confidential Materials that it had in its possession. (Exhibit J, Counterclaims p.9). At the hearings, it was demonstrated that Maddy continued to retain certain of these Materials, including a disc containing valuable and proprietary tools to Success' business (the "Missing Disc"). Success made clear that this Disc was among its most important and confidential business documents.

20.     Despite this evidence, the Arbitrator then failed to issue an appropriate order in the Award mandating a continuing obligation on Maddy to return any materials, including the Missing Disc. Accordingly, Success moves to vacate and/or modify the Award to include an appropriate order over Maddy to return any Materials. The relief specifically requested is set forth in the accompanying Motion and Memorandum of Law.

Dated: January 21, 2004

The foregoing is true and accurate to the best of my knowledge, information and belief. Signed under the pains and penalties of perjury this 21st day of January.

_____
Joseph M. Pastore III

Subscribed and sworn to before me
this 21st day of January 2003.

_____
Notary Public
MARY L. BONNER
MY COMMISSION EXPIRES 1.31.06

HARTFORD 82233v1