UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SUCCESS SYSTEMS, INC. | : CIVIL CASE NO.: 3:01CV1343 (MRK) |
| Plaintiff, | : |
| v. | : |
| MADDY PETROLEUM EQUIPMENT, INC., | : |
| Defendant. | : JANUARY 30, 2004 |

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION TO VACATE OR MODIFY AAA ARBITRATION AWARD

I. BACKGROUND AND PRELIMINARY STATEMENT

In October of 2000 the parties entered into a distribution agreement under which the defendant acted as a distributor of the plaintiff's software. A copy of the distribution agreement is attached as Exhibit B. The distributorship arrangement was short-lived.

On June 21, 2001, the defendant filed a demand for arbitration with the American Arbitration Association (AAA) seeking the refund of $20,000 it had paid in inventory commitment fees. The plaintiff objected to the arbitrability of the dispute, and on July 17, 2001 filed a four-count federal action against the defendant alleging a breach of section 15 of the distribution agreement for failure to return certain materials, a breach of section 13 for disclosure of confidential trade secret information, a violation of the Connecticut Uniform Trade Secrets Act ("CUTSA"), Conn. Gen. Stat. §35-50 et seq., and a violation of the Connecticut Uniform Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §42-110a et seq. The federal action was

stayed, and the plaintiff subsequently elected to have all its claims determined in the arbitration proceeding. To that end, on July 30, 2002, the plaintiff filed an answer and a four-count counterclaim alleging the same claims it had asserted in the federal action. In the prayer for relief on its counterclaims in arbitration the plaintiff sought compensatory damages, pre and post-judgment interest, punitive damages, statutory damages under CUSPA and CUTPA, reasonable attorney's fees under CUSPA and CUTPA, and such other and further relief as the arbitrator deemed just and proper. (Respondents Statement of Answer and Counterclaims, attached as Exhibit C)

There were two and a half days of arbitration hearings before Arbitrator Ernest Fanwick, Esq., an experienced arbitrator mutually selected by the parties, with more than 50 exhibits introduced into evidence. The testimony at the arbitration hearings was not transcribed by a court reporter nor recorded on audiotape. The parties filed post hearing briefs. On December 19, 2003, Arbitrator Fanwick issued the award (Exhibit A) in which he denied the defendant's claim, awarded the plaintiff the remaining $10,000 of the contractual initial inventory commitment fee, and denied all of the plaintiff's other counterclaims. The arbitrator also concluded that, "Each party is to bear their [sic] own Attorney's fees." (Award, Exhibit A, p. 4)

Section 16 "Arbitration" of the distribution agreement provides in part, "The arbitration shall be conducted pursuant to the terms of the Federal Arbitration Act and…the Commercial Arbitration Rules of the American Arbitration Association, before a single arbitrator, … The award of the arbitrator shall be final, binding and conclusive upon the parties hereto…" (Exhibit B)

Rule 1 of the AAA Commercial Arbitration Rules states that whenever parties have provided for arbitration by the AAA under its commercial arbitration rules, they "shall be

2

deemed to have made these rules a part of their arbitration agreement." (Exhibit D) Subsection (d) of Rule 43 "Scope of Award" of the AAA Commercial Arbitration Rules provides, "The award of the arbitrator(s) <u>may</u> include:...(ii) an award of attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration agreement." <u>Id</u>. (emphasis added). <u>Id</u>.

## II. ARGUMENT

### A. Manifest Disregard Of The Facts Is Not a Valid Ground For Vacatur Of An Arbitration Award.

The Federal Arbitration Act (FAA) sets forth the limited grounds upon which a federal court may vacate an arbitration award. In addition to the statutory grounds, this circuit has recognized manifest disregard of the law as a basis for vacatur; however, manifest disregard of the facts is not a basis upon which a federal court may vacate an arbitration award. The Second Circuit has recently clarified that its holding in <u>Halligan v. Piper Jaffray, Inc.</u>, 148 F.3d 107 (2d Cir. 1998) was based on the manifest disregard of the law standard. See <u>GMS Group v. Benderson</u>, 326 F.3d 75, 79 (2d Cir. 2003) (Observing that in <u>Halligan</u>, "we could only conclude that [the arbitrators] had disregarded [the law], as any other explanation would strain credulity given the quantity and quality of the evidence...[W]e reached this conclusion applying the traditional manifest disregard standard.")

### B. The Court Cannot Evaluate The Evidence Because There Is No Record.

In analyzing the manifest disregard of the law standard as applied to the facts of a particular arbitration, courts consider the award and the evidence as revealed by the record. However, in the instant arbitration, there is no record so the court cannot meaningfully evaluate the testimony presented at the arbitration. Therefore, in deciding whether the arbitrator manifestly disregarded the law, this court is perforce limited to a review of the award itself.

C. <u>Disagreement With An Arbitrator's Factual Findings Is Not A Valid Basis For Vacatur or Modification Of An Arbitration Award.</u>

In numbers 4, 5, and 6 (d) of its Motion to Vacate and/or Modify the Arbitration Award, the plaintiff argues that the testimony at the arbitration hearing established that Maddy failed to return certain confidential materials and requests this court to order that the award be modified to impose upon defendant Maddy a continuing obligation to return such materials. The FAA does not authorize such a modification. 9 U.S.C. § 11. In addition, the plaintiff's argument is predicated on testimony that was not credited by the arbitrator and directly contradicts the award. The arbitrator found that the testimony indicated that all of the materials in possession of Maddy were returned and that the plaintiff had failed to meet its burden of proof concerning the retention of such materials. (Award, p.4) It is, of course, axiomatic that courts are bound by the factual findings of the arbitrator. <u>Westerbeke Corp. v. Daihatsu Motor Co., Ltd</u>, 304 F. 3d 200, 213 (2d Cir. 2002).

D. <u>The Material Disregard Of The Law Standard</u>

We turn then to the crux of the plaintiff's position which is that the award should be vacated in whole or in part on the ground that the arbitrator exhibited a manifest disregard of the law. Courts give great deference to arbitration awards, and this is particularly true when an award is challenged on the extremely narrow non-statutory ground of manifest disregard of the law. Judicial review of an arbitration award for manifest disregard of the law is "severely limited." See <u>GMS Group, LLC v. Benderson</u>, 326 F.3d 75, 81 (2d Cir. 2003). The party challenging the award bears the "heavy burden" of proving that the arbitrator manifestly disregarded the law. <u>Id</u>. The Second Circuit recently observed in <u>Duferco Intern Steel v. T. Klaveness Shipping</u>, 333 F.3d 383, 389 (2d Cir. 2003) that:

4

> [The doctrine of manifest disregard] is a doctrine of last resort - its use is limited only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the FAA apply. It should be remembered that arbitrators are hired by parties to reach a result that conforms to industry norms and to the arbitrators' notions of fairness. To interfere with this process would frustrate the intent of the parties, and thwart the usefulness of arbitration, making it "the commencement, not the end" of litigation."

In keeping with the great deference afforded arbitrators, it is well settled that it is not the function of the courts to review an award for errors of law or fact. Saxis S.S. Co. v. Multifacs Intern. Traders, Inc., 375 F.2d 577, 581-582 (2d Cir. 1967). While the precise boundaries of the manifest disregard of the law doctrine have not been defined, it clearly "is more than a simple error in law or a failure by the arbitrators to understand or apply it; and, it is more than an erroneous interpretation of the law." Duferco Intern Steel, supra, 333 F.3d 389. "A party seeking vacatur bears the onerous burden of proving that the arbitrators were fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it." Id.

The manifest disregard of the law standard has both objective and subjective components. In order for an award to be vacated for manifest disregard of the law by the arbitrator, the party challenging the award must prove all of the following: (1) the law that was allegedly ignored was clear, and in fact explicitly applicable to the matter before the arbitrators; (2) that the law was in fact improperly applied meaning that no plausible reading of the arbitration award yields a legally correct justification for the outcome that can be inferred from the facts of the case; and (3) the arbitrator knew of the governing legal principle yet refused to apply it or ignored it altogether. Id. at 389-90. To satisfy the third subjective element, absent evidence of actual knowledge, knowledge will be inferred only if the error is so obvious that it would be instantly perceived as such by the average person qualified to serve as an arbitrator. Id at 390; Halligan v. Piper Jaffrey, Inc., 148 F.3d 197, 202 (2d Cir. 1998).

5

E.  The Plaintiff Falls Far Short Of Meeting The Manifest Disregard Of The Law Standard

The plaintiff contends that the arbitrator manifestly disregarded the law in not awarding it attorney's fees in the requested amount of $132,000. The legal principle under Connecticut law upon which the plaintiff's "manifest disregard of the law" argument is predicated is that "a court has no authority to disregard a contractual provision for an attorney's fee and must limit its determination to the reasonableness of the amount requested." Alpine Construction Co., Inc. v. McGill, 1992 Conn. Super. Lexis 1137, *4 (1992) citing Pacelli Bros. Tran. Inc. v. Pacelli, 189 Conn. 401, 415 (1983). This rule of law was not clearly applicable to the arbitration case, and even if it were, the plaintiff failed to make the arbitrator aware of that legal principle and failed to prove the amount of attorney's fees requested was either reasonable or attributable to the breach or breaches on which the plaintiff prevailed.

The plaintiff contends that sections 17 and 20 of the distribution agreement mandate an award of reasonable attorney's fees and that the arbitrator manifestly disregarded the above legal principle in not awarding it attorney's fees of $132,000. The plaintiff's contentions lack merit.

Section 17 of the agreement provides, in relevant part, "Should Licensor [plaintiff] have any basis to seek such legal or equitable action [for breach by Distributor of the confidential trade secret provisions of Section 13], Distributor [defendant] shall pay any and all attorneys fees and court costs that Licensor may incur." (emphasis added) (Exhibit B) Sections 16 and 17 of the agreement create an exception to the mandatory arbitration provision in that in the event of breach by the defendant of the confidentiality provisions of section 13, the plaintiff was entitled to bring a legal action in court seeking damages and injunctive relief. As shown by the reference to "court costs", section 17 contemplates a court action and thus the attorney's fees provision of that section applies (or certainly could be plausibly construed to apply) only to a court action, not

to arbitration. Therefore, section 17 does not authorize an arbitrator to award attorneys' fees. Furthermore, since the arbitrator in the award concluded that "respondent failed to prove that the claimant disclosed or failed to maintain in confidence any such [confidential] material", (Exhibit A, p. 4), another reason no award of attorney's fees under Section 17 was made was because the arbitrator concluded that the plaintiff's claims in the federal action and in the arbitration for breach of section 13 and for misappropriation of trade secrets in violation of CUTSA or CUTPA were baseless. The meaning of the term "basis" in section 17 is, of course, a matter of contract interpretation that lies within the sole province of the arbitrator and is not subject to challenge or review by this court. The plaintiff has failed to meet its burden of proof on the element that the legal principle invoked clearly applied in regard to the attorney's fees provision of section 17.

The attorney's fees provision in section 20 of the distribution agreement provides, "Distributor [defendant] shall indemnify Licensor [plaintiff] fully for any costs, liability, or harm suffered by Licensor, including <u>reasonable</u> attorney fees, <u>as a direct or indirect result of Distributor's breach</u> of any of the terms of this Agreement." (emphasis added) (Exhibit B) The plaintiff argues that since the arbitrator found a breach by the defendant for its failure to pay the balance of the $10,000 inventory commitment fee and arguably its failure to sooner return the materials, it is entitled to $132,000 as reasonable attorney's fees, even though the lion's share of that amount was incurred in connection with its baseless claims upon which the defendant prevailed.

In so far as the return of materials is concerned, (1) the inclusion of such a breach of contract count in the federal action constituted a breach on the part of the plaintiff of the mandatory arbitration provision of section 16 of the agreement; (2) all of the materials in the defendant's possession were returned prior to the date that the counterclaim was filed in the

arbitration proceeding; and (3) the arbitrator specifically found that no damages resulted from the retention of the materials. Under these circumstances, the award could plausibly be read to mean that the amount of reasonable attorneys' fees for any breach relating to retention of the materials was zero.

Moreover, what the plaintiff attempts to characterize as a manifest disregard of the law is actually a matter of contract interpretation. As noted above, under section 16, the AAA Commercial Arbitration Rules were incorporated into and made a part of the distributor agreement. Subsection (d)(ii) of Rule 43 of the AAA Commercial Arbitration Rules provides, "The award of the arbitrator(s) may include: …an award of attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration agreement." (Exhibit D) The word "may" connotes discretion. Resolution of the conflict between the language of Rule 43 conferring discretion on the arbitrator to include attorney's fees in the award and the mandatory language of the attorneys' fee provision in section 20 is a matter of contract interpretation. Contractual interpretation is within the exclusive province of the arbitrator and is not subject to judicial review or challenge, even if clearly erroneous. See Yusuf Ahmed Alghanim & Sons v. Toys 'R' Us, Inc., 126 F.3d 15, 25 (2d Cir. 1997) "Interpretation of contract term is within the province of arbitrator and will not be overruled simply because we disagree with that interpretation"; In re I/S Stavborg, 500 F.2d 424, 431 (2d Cir. 1974) (holding that there are no grounds to reverse an arbitration award based on even a clearly erroneous contract interpretation). This rule applies with particular force in the context of the court's very limited review of whether the arbitrator manifestly disregarded the law. Westerbeke Corp. v. Daihatsu Motor Co., Ltd, supra, 304 F.3d 214.

8

The legal principle relied on by the plaintiff is not clearly applicable to the instant arbitration because whether it is applicable depends on contract interpretation which is a matter to be determined solely by the arbitrator.

The plaintiff has also failed to meet the subjective prong. In its Motion to Vacate the Award, the plaintiff states at page 10, "Here, the Arbitrator recognized the law at the outset of the hearings. He stated that he was empowered to award attorney's fees under the AAA commercial rules." See also Pastore affidavit ¶ 9 and Rule 43 of AAA Commercial Arbitration Rules. Indeed, the plaintiff acknowledged that the arbitrator informed it of his belief that he had discretion in regard to an award of attorney's fees. On page 27 of its post-hearing brief, the plaintiff admitted that "The Arbitrator informed the parties during the hearings that attorney's fees *may* be awarded in this case under the AAA Commercial Rules of Arbitration". (Exhibit D) The plaintiff fails to mention, however, that the arbitrator also informed the parties in substance that he could award attorney's fees to either party because under the AAA Commercial Arbitration Rules, attorney's fees may be awarded whenever the agreement authorizes an award of attorneys' fees or both parties request them. (Holcomb affidavit, ¶ 5). Notwithstanding the fact that the arbitrator had put the plaintiff on notice of his belief that the discretion vested in him under the "may" language of Rule 43 (which was part of the agreement) "trumped" the "shall" language of paragraph 20, the plaintiff failed to cite any Connecticut case law either at the arbitration hearing or in its post hearing brief standing for the legal principle it now claims the arbitrator disregarded. Consequently, even if the legal principle urged by the plaintiff is applicable, the plaintiff has not met its burden of proving that the arbitrator had actual knowledge of that law and intentionally disregarded it as required under the stringent manifest disregard of the law standard.

Lastly, even assuming arguendo that under Connecticut law section 20 must be given effect and the sole issue for the arbitrator was the reasonableness of the amount requested, the plaintiff would still be not entitled to an award of attorneys' fees because most of the amount requested was not incurred as a result of the $10,000 breach, the amount requested was patently unreasonable, and no evidence was presented by the plaintiff as to what lesser amount was reasonable. As shown by the plaintiffs post arbitration hearing brief, the plaintiff elected to go for "all or nothing" by requesting its entire attorney's fees of approximately $132,000 without any attempt to allocate reasonable amounts attributable to each of its counterclaims in the arbitration and to the federal action. Most of the plaintiff's attorney's fees in this matter were incurred in connection with the plaintiff's baseless contract and tort claims alleging wrongful disclosure and misappropriation of confidential trade secret information and materials on which the defendant prevailed.

Reasonableness is an evidentiary matter on which the party claiming that the amount of attorney's fees requested is reasonable bears the burden of proof. In the arbitration, the plaintiff asserted five separate breach of contract claims and claims for breach of the implied covenant of good faith and fair dealing and for violation of CUTSA and CUTPA. (See, Respondent's Post-Hearing Brief attached as Exhibit F to Pastore's affidavit) The breach of contract claims made by the plaintiff against the defendant in the arbitration were for alleged nonpayment of the $10,000 balance of the initial inventory commitment fee, for not returning the sales materials earlier, for not returning all of such materials, for not using "best efforts" under section 4, and for disclosing confidential trade secrets in violation of section 13. Id. In addition, the plaintiff asserted claims in the arbitration for breach of the implied covenant of good faith and fair dealing and for violation of CUTSA and CUTPA. As a result of the plaintiff's failure to present

evidence of the breakdown of its total attorney's fees resulting from each separate breach alleged and its CUTSA and CUTPA claims, as well as its failure to segregate and deduct that portion of attorney's fees related to the federal lawsuit, the plaintiff, by its own doing, placed itself in the patently untenable and irrational position of requesting approximately $132,000 as reasonable attorney's fees for a simple breach of contract claim for nonpayment of $10,000 and for a delay in returning materials that was cured before that claim was filed in the arbitration and from which no damages ensued. (See page 27 of Respondent's Post-Hearing Brief)[1] In sum, the plaintiff's contention that its entire $132,000 in attorney's fees in this case were incurred "as a direct or indirect result" of the $10,000 breach of contract and represent a reasonable amount for such breach is unsupported by the evidence and unreasonable in the extreme.

Because of the plaintiff's failure to provide a breakdown of its fees based on each separate counterclaim, the plaintiff forced the arbitrator to make the Hobson's choice of awarding the entire $132,000 in attorney's fees requested (a clearly unreasonable and exorbitant amount, the vast majority of which resulted not from the $10,000 breach but from claims on which the plaintiff did not prevail) or nothing. Having chosen to go for "all or nothing," the plaintiff cannot now complain that the arbitrator determined that the amount requested was unreasonable (as it clearly is) and ordered each party to bear its own attorney's fees.

In accordance with Rule 35 of the AAA Commercial Arbitration Rules, at the end of the last day of hearings, Arbitrator Fanwick specifically inquired of each party whether it had any further proofs to offer or witnesses to be heard. Both parties responded in the negative. Under Rule 35, once the post-hearing briefs were filed, the hearing was closed. Once an award is

---

[1] Ironically, the plaintiff in its motion to vacate the award continues to request "full and complete" attorney's fees in the amount of $132,000.

11

issued, the hearing cannot be re-opened and the arbitrator is not empowered to re-determine the merits of any claim already decided. (AAA Commercial Arbitration Rules, Rules 46 and 36) It thus appears that under the arbitration rules applicable to this arbitration, once the award was issued, the arbitrator did not have the authority to re-open the hearing to allow the plaintiff the opportunity to present evidence as to what portion of the $132,000 amount was reasonably related to the $10,000 breach of contract claim as opposed to all of the other counterclaims on which the defendant prevailed. In any event, the plaintiff made no request to reopen prior to the issuance of the award and arbitrator was not obligated to do so *sua sponte*.

It is axiomatic that the arbitrators need not disclose the reasoning behind their award. Koch Oil, S.A. v. Transocean Gulf Oil Co., 751 F.2d 551, 554 (2d Cir. 1985); AAA Commercial Arbitration Rules, Rule 42(b). In the instant arbitration award, the arbitrator did not explain why he determined that each party should bear its own attorney's fees. However, a number of plausible explanations readily come to mind. One is that the arbitrator construed the discretion conferred on him by Rule 43 to "trump" the mandatory language of the attorneys' fees provision of section 20. Another is that the arbitrator found that the requested amount of $132,000 was unreasonable and could not determine from the evidence what portion of that unreasonably exorbitant amount was incurred as a result of the breach of contract claim for payment of the $10,000 balance of the inventory commitment fee as opposed to the plaintiff's claims for breach of section 13 (confidential information), section 4 (best efforts), the implied covenant of good faith and fair dealings, and misappropriation of trade secrets in violation of CUTSA and the CUTPA claim, and the separate federal lawsuit. A third plausible explanation is that in its arbitration counterclaims, the plaintiff requested reasonable attorney's fees under CUTSA and CUTPA, but not for breach of contract. If any plausible reading of the arbitration award yields a

12

legally correct justification for the outcome that can be inferred from the facts, the award must be upheld. Duferco Intern Steel v. T. Klaveness Shipping, supra, 333 F.2d 390. Here, there are many.

### III. CONCLUSION

Under the guise of the manifest disregard of the law doctrine, the plaintiff basically rehashes factual contentions and reargues matters of contract interpretation that were rejected by the arbitrator in the award. The plaintiff has not proved that the legal principle in question was explicitly applicable, that it was in fact improperly applied, or that the arbitrator knew of the legal principle but ignored and refused to apply it. In sum, none of the elements required to vacate an arbitration award on the very narrow ground of manifest disregard of the law has been met by the plaintiff, let alone all three. Accordingly, the plaintiff's motion to vacate and/or modify the award must be denied.

Respectfully submitted on behalf of the Defendant

By _____
Warren L. Holcomb, Esq.
Federal Bar No. ct13127
Berchem, Moses & Devlin, P.C.
75 Broad Street
Milford, CT 06460
(203) 783-1200

## CERTFICATION

This is to certify that a copy of the foregoing Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Vacate or Modify AAA Arbitration Award was mailed on January 30, 2004 by U.S. mail first class, postage prepaid to the following:

Joseph M. Pastore, III, Esq.
Thomas J. Lengyel, Esq.
Brown, Raysman, Millstein, Felder & Steiner LLP
CityPlace II
185 Asylum Street
Hartford, CT 06103

*/s/ Warren L. Holcomb*
Warren L. Holcomb

## CERTFICATION

This is to certify that a copy of the foregoing Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Vacate or Modify AAA Arbitration Award was mailed on January 30, 2004 by U.S. mail first class, postage prepaid to the following:

Joseph M. Pastore, III, Esq.
Thomas J. Lengyel, Esq.
Brown, Raysman, Millstein, Felder & Steiner LLP
CityPlace II
185 Asylum Street
Hartford, CT 06103

*[signature]*
Warren L. Holcomb