## AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| In the Matter of the Arbitration between<br><br>**Maddy Petroleum Equipment, Inc.**<br>　　　　　　　　　　　Claimant,<br><br>v.<br><br>**Success Systems, Inc.,**<br>　　　　　　　　　　　Respondent. | No. 12 E 181 00446 1<br><br><br>July 30, 2002 |

### RESPONDENT'S STATEMENT OF
### ANSWER AND COUNTERCLAIMS

Respondent Success Systems, Inc. ("Success") hereby submits its Statement of Answer[1] and Counterclaims in response to Claimant Maddy Petroleum Equipment, Inc.'s ("Maddy") Demand for Arbitration dated June 11, 2001 (the "Demand").[2]

### PRELIMINARY STATEMENT

As set forth below, Success generally denies the claims asserted by Claimant Maddy. Success also brings Counterclaims for damages against Maddy for breach of contract, misappropriation of trade secrets and other confidential materials in violation of The Connecticut Uniform Trade Secrets Act ("CUTSA"), and conduct constituting a violation of The Connecticut Unfair Trade Practices Act ("CUTPA"). The Counterclaims were previously asserted in the Federal Action and are asserted again here in the event the arbitrator determines these claims to

---

[1] Success filed a Procedural Answering Statement on July 10, 2001 concerning the issues of arbitrability that did not address the merits of the Demand, but did reserve the right of Success to file this Statement of Answer and Counterclaim on the merits.

[2] By way of background, Success filed a complaint in Federal Court on July 17, 2001 (the "Federal Action") based on the Counterclaims asserted herein. Success also filed a Motion to Stay Arbitration as to Maddy's claims. Thereafter, on August 27, 2001, Maddy filed a Motion to Dismiss the Federal Action, and the Court stayed this Motion pending a determination of arbitrability by the AAA. In addition, Maddy filed an Objection to Success' Motion to Stay Arbitration on August 31, 2001, and the Court found that Maddy's claim for arbitration should also be determined by the AAA. Thus, the issue of arbitrability as to all claims has yet to be ruled upon by the Arbitrator in this matter.

HARTFORD 66503v1

be arbitrable in this proceeding.

As set forth particularly below, Maddy's claims in this Arbitration seek a refund of monies deposited under a contract. Maddy filed the Arbitration as an effort to cast itself as the victim, when in fact Maddy breached the very contract at issue and misappropriated Success' most vital and proprietary trade secrets and information which had been provided to Maddy as part of that contract. Accordingly, Success seeks an award in this Arbitration dismissing Maddy's claims and awarding damages to Success as a result of Maddy's conduct.

## FACTUAL BACKGROUND

On or about October 13, 2000, Success and Maddy entered into the "Sales Distributor Agreement", whereby Maddy agreed to use its best efforts to market and/or distribute software products created by Success that facilitate inventory control, cash management, financial record-keeping and point-of-sale communication functions for gasoline retail outlets (the "Contract") (A copy of this Contract is attached hereto as Exhibit A.) Maddy was to act as a distributor by soliciting customers and/or end-users to enter into license agreements for the software provided by Success.

### Non-Payment

Maddy agreed to pay $30,000 to Success under the Contract, in the form of "Inventory Commitment" fees, as value to secure the rights to market the Success-owned software to the customer and/or end-user. In exchange, Maddy would receive "Platinum Distributor" status, which status gave Maddy the benefit of a 40% discount on any and all inventory purchased as well as additional support and/or maintenance services. Although Success satisfied all of its obligations under the Contract, Maddy only paid $20,000 in Inventory Commitment fees. Accordingly, and by way of this Counterclaim, Success seeks the recovery of the remaining

$10,000 as compensatory damages resulting from this breach.

After several months of inactivity on the part of Maddy with respect to negotiating and/or generating license agreements, and after Maddy had failed to pay the full amount of its Inventory Commitment fees or order the agreed upon inventory, Success notified Maddy that it was in breach of the Contract for non-payment. At this point, Maddy unilaterally terminated the Contract, having only paid $20,000 in Inventory Commitment fees.

The Contract expressly provides that "prepaid and unused fees will be refunded" to Maddy *only if* Success terminates the Contract within the initial 90-day period, which was not the case here, as the contract was terminated well after 90 days. (Contract § 11, Exhibit A.) Despite the presence of this clear and unambiguous language in the Contract, Maddy contends (in its Demand) that it is somehow entitled to a return of the $20,000 in Inventory Commitment fees that it paid under the Contract.

### Failure to Return Confidential Materials

In order to serve as a distributor under the contract, Success provided Maddy with Success' most critical and valuable business materials. These materials included the software itself, Success' client lists, pricing information, educational, training and administrative manuals including the "Sales Resource Guide", memoranda, notes, records, drawings, discs and other valuable data and materials owned by and pertaining to Success' business (hereinafter, the "Confidential Materials"). The Confidential Materials were clearly marked as confidential and Maddy knew that they were to be kept confidential, as the Contract expressly required that they be kept confidential. (Contract § 13, Exhibit A.)

In blatant disregard of the Contract's express terms and the repeated demands by Success, Maddy refused to return the software and other Confidential Materials unless and until Success

returned the $20,000. It was not until March 6, 2002 (and well after Success' filing of the Federal Action) that Maddy finally returned the Confidential Materials and software. Clearly, Maddy's unlawful retention of these Materials is a breach of § 15 of the Contract, which provision mandates that Maddy return the Confidential Materials and software upon the *request* of Success and/or upon any termination of the Contract. (Contract § 15, Exhibit A.) Maddy has conceded this breach by now returning the Confidential Materials.

### Breach of Confidentiality / Misappropriation

At or near the time that Maddy terminated the Contract, Maddy entered into a similar distribution agreement with a direct competitor of Success, CMI Solutions, Inc. ("CMI"). In the context of this CMI contract, Maddy agreed to market and/or distribute CMI software for licensing, which software is similar in nature to that at issue here. Maddy and CMI have been and are now competing directly with Success for business opportunities. Upon information and belief, Maddy has made use of the Confidential Materials and/or trade secrets in order to undermine Success' efforts in developing business and/or to unfairly compete with Success.

That is, Maddy has and continues to misappropriate Success' Confidential Materials and/or trade secrets so as to interfere with, unfairly compete with, and willfully undermine Success' business opportunities and contractual relations with other companies in the industry. Maddy's conduct in this regard constitutes a clear breach of § 13 of the Contract, which states: "[Maddy] shall maintain in *strict confidence,* and shall not use or disclose...all Trade Secrets of [Success]."[3] (Contract § 13, Exhibit A.)

---

[3] The Contract defines "Trade Secrets" at § 13, which section provides, in pertinent part, that "Trade Secrets" include "non-public information regarding the products of [Success], names and addresses of any End-Users, sales Distributors or Distributors of the [Success] products, product pricing information, account invoices, training and educational manuals, administrative manuals, and prospective customer leads developed by [Success], in whatever form... (Contract § 13, Exhibit A.)

4

Moreover, Maddy's conduct has been a direct and substantial factor in blocking and/or preventing Success from entering into various business arrangements and/or contracts that would have yielded substantial profits for Success. First, upon information and belief, Success contends that Maddy interfered with and/or undermined Success' efforts to negotiate a contract with an entity known as Englefield Oil Company ("Englefield"), as Maddy made use of the Confidential Materials so as to eliminate any chances that Success had in obtaining this contract.

Second, Success has reason to believe that Maddy has misappropriated the Confidential Materials for the purpose of interfering and/or blocking Success' chances of entering into a significant number of contracts with certain franchisees of a major oil company in the mid-western region, which contracts involve point-of-sale communication functions for gasoline retail outlets.[4]

Third, at or near the time when Maddy began misappropriating the Confidential Materials, Success had bid on five (5) separate but related contracts with one particular company in Maddy's service area or where Maddy is the servicing agent ("Company X"). Previously, Success had negotiated a contract with Company X and rendered full and adequate performance thereunder. Despite its established course of dealing with Company X, Success did not obtain the remaining five (5) contracts due to Maddy's willful misappropriation of the Confidential Materials and use of the information gleaned from those Materials in sales efforts with Company X. Maddy's acts of willful misappropriation, and its breach of Contract with substantial aggravating circumstances, is a violation of both CUTSA and CUTPA.

---

[4] For confidentiality reasons, and because the parties do not yet have a confidentiality agreement in this case, Success will not disclose the names of certain other companies in the industry. Success, however, intends to submit this information for the Arbitrator's review "in camera" at the appropriate time.

HARTFORD 66503v1

Not only has Maddy wrongfully held the Confidential Materials "hostage" – demanding an exchange for the $20,000 – it has also used and/or misappropriated the Confidential Materials and/or trade secrets to unfairly compete with and to cause harm to Success' business. Accordingly, an award must enter in this Arbitration in favor of Success.

## SPECIFIC RESPONSES TO DEMAND

1. **Allegation**

In contemplation of entering into a distribution arrangement with Success Systems, Inc. (the "Respondent"), Maddy Petroleum Equipment, Inc. (the "Claimant") delivered to the Respondent the sum of Twenty Thousand ($20,000.00) Dollars as an advance payment for inventory purchases.

**Answer:** Success admits to receiving the sum of $20,000 from Maddy as required by Maddy under the Contract, but denies the remainder of this allegation in the Demand.

2. **Allegation**

These funds were delivered pursuant to a proposed Distributor Application & Distribution Contract (the "Contract") prepared by the Respondent and forwarded to the Claimant, which the Claimant revised, executed, and returned to the Respondent.

**Answer:** Success admits to drafting the Contract, and admits that Maddy delivered the sum of $20,000 to Success under the terms of that Contract, but denies the remainder of this allegation in the Demand.

3. **Allegation**

The Respondent never acknowledged the Claimant's revisions to the proposed Agreement, nor provided the Claimant with a fully executed copy of the proposed Agreement in the same form executed by the Claimant.

**Answer:** Success denies this allegation in the Demand.

4. **Allegation**

Despite the fact that the Claimant delivered these funds to the Respondent in good faith, the Respondent failed to deliver any inventory to the Claimant.

HARTFORD 66503v1

  **Answer:**  Success denies this allegation in the Demand.

5. **Allegation:**

  [The Respondent] refused to cooperate with the Claimant's efforts to distribute product to customers solicited by the Claimant. On numerous occasions, the Respondent intentionally interfered with the Claimant's efforts to solicit customers for the Respondent's products, by (a) canceling meetings with prospective customers arranged by the Claimant; (b) sending representatives who arrived late and were unprepared to meetings arranged by the Claimant with prospective customers; and (c) criticizing products distributed by the Claimant.

  **Answer:**  Success denies this allegation in the Demand.

6. **Allegation:**

  Moreover, the Respondent attempted to use information regarding the Claimant's business, which it obtained from the Claimant to become a distributor for products for which the Claimant was already a distributor.

  **Answer:**  Success denies this allegation in the Demand.

7. **Allegation:**

  As a result of the Respondent's actions, the Claimant was unable to fulfill its obligations under the proposed Agreement.

  **Answer:**  Success denies this allegation in the Demand.

8. **Allegation:**

  By fraudulently inducing the Claimant to enter into the proposed Agreement and deliver the initial payments to the Respondent, intentionally interfering with the Claimant's activities pursuant to the proposed Agreement, and failing to provide the Claimant with the support and inventory necessary for the Claimant to carry out its obligations, the Respondent has caused significant damages to the Claimant.

  **Answer:**  Success denies this allegation in the Demand.

9. **Allegation:**

  Accordingly, the Claimant seeks compensation for its actual damages arising out of the Respondent's conduct, including but not limited to a return of all funds delivered to the Respondent pursuant to the Agreement in the aggregate amount of Twenty Thousand ($20,000.00) Dollars, and its consequential damages.

  **Answer:**  Success denies this allegation in the Demand.

## COUNTERCLAIMS

### FIRST CAUSE OF ACTION (Breach of Contract – Confidentiality)

1. Success hereby incorporates the Preliminary Statement into this First Cause of Action as if fully set forth herein.

2. The Contract is valid, enforceable and supported by valuable consideration.

3. Under § 13 of the Contract entitled, "Confidentiality," the Contract provides that: "Distributor shall maintain in strict confidence, and shall not use or disclose except as required to perform its duties for Licenser, all Trade Secrets of Licenser. This obligation shall apply during and after the term of this Contract." (Contract § 13, Exhibit A.)

4. Maddy refused to return the Confidential Materials for a significant period of time, which Confidential Materials constitute "trade secrets" as defined at law and in § 13 of the Contract, after Maddy unilaterally terminated the Contract.

5. In the course of entering and/or performing its contract with CMI, and as a direct competitor of Success in the industry, Maddy used, disclosed and otherwise failed to maintain Success' Confidential Materials in strict confidence. Maddy's conduct in this regard constitutes a clear breach of § 13 of the Contract.

6. Upon information and belief, Maddy has and continues to use, disclose and/or misappropriate Success' Confidential Materials and/or trade secrets to unfairly compete with Success – as Maddy has and continues to destroy, block and/or interfere with Success' existing and future contracts and business relations with respect to other companies in the industry.

7. As a direct and proximate result of Maddy's breach of § 13 of the Contract, Success has been damaged in an amount to be determined at the Arbitration.

8

8. Moreover, in light of Maddy's continuing breach of the Contract, and in order to prevent any further harm to Success, Success is entitled to a permanent injunction enjoining Maddy from any further use, disclosure and/or misappropriation of Success' Confidential Materials and/or trade secrets.

**SECOND CAUSE OF ACTION (Breach of Contract – Failure to Return Materials)**

1-8. Success hereby incorporates the Preliminary Statement and paragraphs 1 through 8 above into this Second Cause of Action as if fully set forth herein.

9. Under § 15 of the Contract entitled "Return of Materials", the Contract provides that: "upon the request of the Licenser and, in any event, upon the termination of Distributor's engagement, Distributor shall deliver to Licenser all software, memoranda, notes, records, drawings, manuals, disks, or other documents and media pertaining to Licenser's business or Distributor's activities or duties as a Licenser Distributor ..." (Contract § 15, Exhibit A.)

10. Maddy breached the Contract by failing and/or flatly refusing to return the Confidential Materials and software owned by Success – in direct violation of § 15 of the Contract – despite numerous demands by Success for the immediate return of these valuable Confidential Materials, software and/or trade secrets.

11. As a direct and proximate result of Maddy's breach of § 15 of the Contract, Success has been damaged in an amount to be proven at the Arbitration.

**THIRD CAUSE OF ACTION (The Connecticut Uniform Trade Secrets Act)**

1-11. Success hereby incorporates the Preliminary Statement and paragraphs 1 through 11 above into this Third Cause of Action as if fully set forth herein.

12. Pursuant to the terms of the Contract, Maddy had access to and actual possession of Success' Confidential Materials and/or trade secrets.

13. These Confidential Materials and/or trade secrets have independent economic value because they are not generally known to others and would be highly valuable in planning and/or establishing a competing business.

14. Success has made reasonable efforts to maintain the confidentiality and/or secrecy of the Confidential Materials and/or trade secrets, and has made every possible effort to reclaim possession of the Confidential Materials that Maddy unlawfully retained.

15. The Confidential Materials constitute "trade secrets" as that term is defined pursuant to CUTSA at Conn. Gen. Stat. § 35-51(d).

16. Following its termination of the Contract, Maddy unlawfully refused to return the Confidential Materials and/or trade secrets. Moreover, upon information and belief, Maddy has and continues to willfully misappropriate Success' Confidential Materials and/or trade secrets – in violation of Conn. Gen. Stat. § 35-51(b) – so as to interfere with, unfairly compete with, and willfully undermine Success' business opportunities and contractual relations with other companies in the industry.

17. As a direct and proximate result of Maddy's violation of CUTSA, Success has been damaged in an amount to be proven at the Arbitration.

18. Moreover, in light of Maddy's continuing misappropriation of Success' Confidential Materials and/or trade secrets, and in order to prevent any further harm to Success, Success is entitled to a permanent injunction under CUTSA enjoining Maddy from any further use, disclosure and/or misappropriation of Success' Confidential Materials and/or trade secrets.

## **FOURTH CAUSE OF ACTION** (The Connecticut Unfair Trade Practices Act)

1-18. Success hereby incorporates the Preliminary Statement and paragraphs 1 through 18 above into this Fourth Cause of Action as if fully set forth herein.

19. In blatant disregard of the Contract's express terms and the repeated demands by Success, Maddy flatly refused to return Success' Confidential Materials, software and other proprietary information belonging to Success, which Materials Success invested considerable time, money and effort in developing. At all relevant times as described herein, Maddy was acting in the conduct of trade and/or commerce (as defined by CUTPA).

20. Upon information and belief, Maddy has and continues to use, disclose and/or misappropriate Success' Confidential Materials, software and/or trade secrets so as to unfairly and directly compete with Success for potential customers in the computer software industry.

21. By using and/or misappropriating Success' Confidential Materials and/or trade secrets, without the permission and/or authorization of Success, Maddy engaged in unfair trade practices and unfair competition in violation of CUTPA.

22. Maddy's exploitation of its business relationship with Success, in order to obtain and misappropriate Success' Confidential Materials and/or trade secrets, is immoral, unethical and/or unscrupulous. Further, and with respect to Maddy's breach of the Contract, Maddy's conduct was egregious and involved "substantial aggravating circumstances" that support a violation of CUTPA.

23. Maddy's conduct in this regard offends public policy as established by statute, common law or otherwise.

24. Maddy's conduct has caused substantial injury to Success, to consumers, as well as to other competitors and/or businesses in the industry.

HARTFORD 66503v1

25. As a direct and proximate result of Maddy's unfair trade practices and unfair competition, Success has been damaged in an amount to be proven at the Arbitration.

**WHEREFORE**, Respondent Success prays for the following:

A. Compensatory Damages;

B. Pre and Post-Judgment Interest at law and pursuant to Conn. Gen. Stat. § 37-3a;

C. Punitive Damages;

D. Statutory Damages under CUTSA and CUTPA;

E. Reasonable Attorneys' Fees and Costs at law and under CUTSA and CUTPA; and

F. Such Other and Further Relief as the Arbitrator deems just and proper.

Dated: Hartford, CT
July 30, 2002

THE RESPONDENT,
SUCCESS SYSTEMS, INC.

By: _____
Joseph M. Pastore III, Esq.
Thomas J. Lengyel, Esq.
Brown Raysman Millstein Felder & Steiner, LLP
CityPlace II, 10th Floor
185 Asylum Street
Hartford, CT 06103
Telephone: (860) 275-6400
Facsimile: (860) 275-6410

\*   \*   \*

900 Third Avenue
New York, NY 10022

12

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was sent first class mail, postage prepaid, on July 30, 2002, to the following counsel of record:

Warren Holcomb, Esq.
Berchem, Moses & Devlin, P.C.
75 Broad Street
Milford, CT 06460

*[signature: Joseph N. Parks]*

(b) by a written declaration of the mediator to the effect that further efforts at mediation are no longer worthwhile; or

(c) by a written declaration of a party or parties to the effect that the mediation proceedings are terminated.

### M-15. Exclusion of Liability

Neither the AAA nor any mediator is a necessary party in judicial proceedings relating to the mediation. Neither the AAA nor any mediator shall be liable to any party for any act or omission in connection with any mediation conducted under these procedures.

### M-16. Interpretation and Application of Procedures

The mediator shall interpret and apply these procedures insofar as they relate to the mediator's duties and responsibilities. All other procedures shall be interpreted and applied by the AAA.

### M-17. Expenses

The expenses of witnesses for either side shall be paid by the party producing such witnesses. All other expenses of the mediation, including required traveling and other expenses of the mediator and representatives of the AAA, and the expenses of any witness and the cost of any proofs or expert advice produced at the direct request of the mediator, shall be borne equally by the parties unless they agree otherwise.

### ADMINISTRATIVE FEES

The nonrefundable case set-up fee is $325 per party. In addition, the parties are responsible for compensating the mediator at his or her published rate, for conference and study time (hourly or per diem).

All expenses are generally borne equally by the parties. The parties may adjust this arrangement by agreement.

Before the commencement of the mediation, the AAA shall estimate anticipated total expenses. Each party shall pay its portion of that amount as per the agreed upon arrangement. When the mediation has terminated, the AAA shall render an accounting and return any unexpended balance to the parties.

### COMMERCIAL ARBITRATION RULES

### R-1. Agreement of Parties*+

(a) The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter AAA) under its Commercial Arbitration Rules or for arbitration by the AAA of a domestic commercial dispute without specifying particular rules. These rules and any amendment of them shall apply in the form in effect at the time the administrative requirements are met for a demand for arbitration or submission agreement received by the AAA. The parties, by written agreement, may vary the procedures set forth in these rules. After appointment of the arbitrator, such modifications may be made only with the consent of the arbitrator.

(b) Unless the parties or the AAA determines otherwise, the Expedited Procedures shall apply in any case in which no disclosed claim or counterclaim exceeds $75,000, exclusive of interest and arbitration fees and costs. Parties may also agree to use these procedures in larger cases. Unless the parties agree otherwise, these procedures will not apply in cases involving more than two parties. The Expedited Procedures shall be applied as described in Sections E-1 through E-10 of these rules, in addition to any other portion of these rules that is not in conflict with the Expedited Procedures.

arbitrator may require security for the cost of such measures.

(c) A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

** The Optional Rules may be found below.

### R-35. Closing of Hearing

The arbitrator shall specifically inquire of all parties whether they have any further proofs to offer or witnesses to be heard. Upon receiving negative replies or if satisfied that the record is complete, the arbitrator shall declare the hearing closed. If briefs are to be filed, the hearing shall b e declared closed as of the final date set by the arbitrator for the receipt of briefs. If documents are to be filed as provided in Section R-32 and the date set for their receipt is later than that set for the receipt of briefs, the later date shall be the closing date of the hearing. The time limit within which the arbitrator is required to make the award shall commence, in the absence of other agreements by the parties, upon the closing of the hearing.

### R-36. Reopening of Hearing

The hearing may be reopened on the arbitrator's initiative, or upon application of a party, at any time before the award is made. If reopening the hearing would prevent the making of the award within the specific time agreed on by the parties in the contract(s) out of which the controversy has arisen, the matter may not be reopened unless the parties agree on an extension of time. When no specific date is fixed in the contract, the arbitrator may reopen the hearing and shall have 30 days from the closing of the reopened hearing within which to make an award.

### R-37. Waiver of Rules

Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with and who fails to state an objection in writing shall be deemed to have waived the right to object.

### R-38. Extensions of Time

The parties may modify any period of time by mutual agreement. The AAA or the arbitrator may for good cause extend any period of time established by these rules, except the time for making the award. The AAA shall notify the parties of any extension.

### R-39. Serving of Notice

(a) Any papers, notices, or process necessary or proper for the initiation or continuation of an arbitration under these rules, for any court action in connection therewith, or for the entry of judgment on any award made under these rules may be served on a party by mail addressed to the party, or its representative at the last known address or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard to the dispute is or has been granted to the party.

(b) The AAA, the arbitrator and the parties may also use overnight delivery or electronic facsimile transmission (fax), to give the notices required by these rules. Where all parties and the arbitrator agree, notices may be transmitted by electronic mail (E-mail), or other methods of communication.

(c) Unless otherwise instructed by the AAA or by the arbitrator, any documents submitted by any party to the AAA or to the arbitrator shall simultaneously be provided to the other party or parties to the arbitration.

### R-40. Majority Decision

When the panel consists of more than one arbitrator, unless required by law or by the arbitration agreement, a majority of the arbitrators must make all decisions.

### R-41. Time of Award

The award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 days from the date of closing the hearing, or, if oral hearings have been waived, from the date of the AAA's transmittal of the final statements and proofs to the arbitrator.

### R-42. Form of Award

(a) Any award shall be in writing and signed by a majority of the arbitrators. It shall be executed in the manner required by law.

(b) The arbitrator need not render a reasoned award unless the parties request such an award in writing prior to appointment of the arbitrator or unless the arbitrator determines that a reasoned award is appropriate.

### R-43. Scope of Award

(a) The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract.

(b) In addition to a final award, the arbitrator may make other decisions, including interim, interlocutory, or partial rulings, orders, and awards. In any interim, interlocutory, or partial award, the arbitrator may assess and apportion the fees, expenses, and compensation related to such award as the arbitrator determines is appropriate.

(c) In the final award, the arbitrator shall assess the fees, expenses, and compensation provided in Sections R-49, R-50, and R-51. The arbitrator may apportion such fees, expenses, and compensation among the parties in such amounts as the arbitrator determines is appropriate.

(d) The award of the arbitrator(s) may include:

(i) interest at such rate and from such date as the arbitrator(s) may deem appropriate; and

(ii) an award of attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration agreement.

### R-44. Award upon Settlement

If the parties settle their dispute during the course of the arbitration and if the parties so request, the arbitrator may set forth the terms of the settlement in a "consent award." A consent award must include an allocation of arbitration costs, including administrative fees and expenses as well as arbitrator fees and expenses.

### R-45. Delivery of Award to Parties

Parties shall accept as notice and delivery of the award the placing of the award or a true copy thereof in the mail addressed to the parties or their representatives at the last known addresses, personal or electronic service of the award, or the filing of the award in any other manner that is permitted by law.

### R-46. Modification of Award

Within 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator, through the AAA, to correct any clerical, typographical, or computational errors in the award. The arbitrator is not empowered to

redetermine the merits of any claim already decided. The other parties shall be given 10 days to respond to the request. The arbitrator shall dispose of the request within 20 days after transmittal by the AAA to the arbitrator of the request and any response thereto.

### R-47. Release of Documents for Judicial Proceedings

The AAA shall, upon the written request of a party, furnish to the party, at the party's expense, certified copies of any papers in the AAA's possession that may be required in judicial proceedings relating to the arbitration.

### R-48. Applications to Court and Exclusion of Liability

(a) No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.

(b) Neither the AAA nor any arbitrator in a proceeding under these rules is a necessary or proper party in judicial proceedings relating to the arbitration.

(c) Parties to an arbitration under these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof.

(d) Parties to an arbitration under these rules shall be deemed to have consented that neither the AAA nor any arbitrator shall be liable to any party in any action for damages or injunctive relief for any act or omission in connection with any arbitration under these rules.

### R-49. Administrative Fees

As a not-for-profit organization, the AAA shall prescribe an initial filing fee and a case service fee to compensate it for the cost of providing administrative services. The fees in effect when the fee or charge is incurred shall be applicable. The filing fee shall be advanced by the party or parties making a claim or counterclaim, subject to final apportionment by the arbitrator in the award. The AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees.

### R-50. Expenses

The expenses of witnesses for either side shall be paid by the party producing such witnesses. All other expenses of the arbitration, including required travel and other expenses of the arbitrator, AAA representatives, and any witness and the cost of any proof produced at the direct request of the arbitrator, shall be borne equally by the parties, unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties.

### R-51. Neutral Arbitrator's Compensation

(a) Arbitrators shall be compensated at a rate consistent with the arbitrator's stated rate of compensation.

(b) If there is disagreement concerning the terms of compensation, an appropriate rate shall be established with the arbitrator by the AAA and confirmed to the parties.

(c) Any arrangement for the compensation of a neutral arbitrator shall be made through the AAA and not directly between the parties and the arbitrator.

### R-52. Deposits

The AAA may require the parties to deposit in advance of any hearings such sums of money as it deems necessary to cover the expense of the arbitration, including the arbitrator's fee, if any, and shall render an accounting to the parties and return any unexpended balance at the conclusion of the case.