UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SUCCESS SYSTEMS, INC. | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | CIVIL NO.   3:01 cv 1343 (MRK) |
| | : | |
| MADDY PETROLEUM EQUIPMENT, INC. | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OF DECISION

In this case, the Court is asked to apply the judicially-developed "manifest disregard" ground for vacating an arbitration award. As in several other cases that have come before this Court in recent months, plaintiff seeks to vacate an arbitrator's award on the basis that the arbitrator manifestly disregarded both the evidence and the law. However, the Second Circuit does not recognize manifest disregard of the evidence as proper ground for vacating an arbitrator's award. The Second Circuit's manifest disregard standard is limited to manifest disregard of the law, not the evidence. Moreover, in a series of recent decisions, that court has made it clear that its manifest disregard of the law standard imposes formidable burdens on litigants seeking to obtain judicial relief from an arbitration award. Manifest disregard of the law is a doctrine of last resort, available on only the rarest of occasions and in the most egregious of circumstances. Here, plaintiff has failed to satisfy its heavy burden under the standards articulated in recent Second Circuit decisions. Accordingly, the Court DENIES Plaintiff's Motion to Vacate and/or Modify AAA Arbitration Award [doc. # 33].

**I.**

The facts underlying the parties' dispute are set forth in the decision of the arbitrator (the "Decision").  *See* Def's Mem. in Opp. to Pl's Mot. to Vacate or Modify AAA Arbitration Award [doc. # 37], Ex. A ("Def's Mem.").  The Court will not repeat those facts at length.  Suffice it to say that the arbitration at issue relates to disputes between the parties that arose following defendant Maddy Petroleum Equipment, Inc.'s ("Maddy") execution of a Distribution Agreement, *see* Def's Mem., Ex. B, with plaintiff Success Systems, Inc. ("Success").  Maddy commenced the arbitration and, under various theories, sought return of $20,000 that it had paid Success for certain software licenses at the outset of its distributorship.  Success counterclaimed, arguing that Maddy had breached the agreement in failing to make a final installment of $10,000 for initial software purchases, that Maddy had misappropriated Success' trade secrets and confidential information, and that Maddy had violated the Connecticut Uniform Trade Secrets Act, Conn. Gen. Stat. § 35-50, *et seq*. ("CUTSA"), and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110(a), *et seq*. ("CUTPA").  With attorneys fees, punitive damages and interest, Success sought an award in the arbitration of approximately $900,000.

Success originally asserted the foregoing claims against Maddy in this action in a Complaint [doc. #1] filed on July 17, 2001.  However, Maddy moved to dismiss those claims on the ground that the Distribution Agreement and the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. (The "FAA") required Success to arbitrate its claims. Mem. in Supp. of Def.'s Mot. to Dismiss [doc. #11], at 2-3.  After extensive briefing but before a decision by this Court on Maddy's motion, Success agreed to submit its claims to the American Arbitration Association ("AAA") in

the arbitration that Maddy had already begun under section 16 of the Distribution Agreement.[1] This action was then dismissed to permit the parties to arbitrate their claims. *See* Order of Dismissal [doc. # 30].

An experienced arbitrator mutually selected by the parties presided over the arbitration, which involved two and one-half days of hearings, and more than 50 exhibits submitted by both parties. By agreement of the parties, however, testimony at the arbitration hearing was not transcribed by a court reporter or recorded on an audiotape. Therefore, there is no record of the testimony before the arbitrator.[2] In a five-page Award of Arbitrator dated December 19, 2003, the arbitrator rejected every claim asserted by each party, with one exception; the arbitrator required Maddy to pay Success the $10,000 "still due as a part of the initial payment" on the parties' Distribution Agreement. As is particularly relevant here, although both parties sought

---

[1] Section 16 provides that "[e]xcept as set forth in Section 17 hereof, any claim, controversy, or dispute arising between the parties with respect to this Agreement, to the maximum extent allowed by applicable law including disputes as to arbitrability, shall be submitted to and resolved by arbitration. The arbitration shall be conducted pursuant to the terms of the Federal Arbitration Act and (except as otherwise specified herein) the Commercial Arbitration rules of the American Arbitration Association . . . The award of the arbitrators shall be final, binding, and conclusive upon the parties hereto . . ." Def's Mem., Ex. A.

[2] The parties filed pre-argument and post-argument arbitration briefs, which they have provided to the Court, along with certain other arbitration pleadings, including: Plaintiff's Motion to Vacate and/or Modify AAA Arbitration Award [doc. #33]; Plaintiff's Memorandum in Support of Motion to Vacate and/or Modify AAA Arbitration Award [doc. #34]; Affidavit of Joseph M. Pastore III [doc. #35]; Defendant's Motion to Strike Parts of the Affidavits of Joseph M. Pastore III and Exhibits [doc. #36]; Defendant's Memorandum in Opposition to Plaintiff's Motion to Vacate or Modify AAA Arbitration Award [doc. #37]; Affidavit of Warren L. Holcomb in Opposition to Motion to Vacate and/or Modify Arbitration Award [doc. #38]; Plaintiff's Reply Memorandum in Support of Motion to Vacate and/or Modify Arbitration Award [doc. #39]; Reply Affidavit of Thomas J. Lengyel [doc. #40]; Plaintiff's Memorandum in Opposition to Motion to Strike Affidavit of Joseph M. Pastore III [doc. #41]; and Proposed Surreply Memorandum of Law in Opposition to Plaintiff's Motion to Vacate Arbitration Award [doc. #44]. The parties did not submit the arbitration exhibits to the Court.

recovery of their legal fees, the arbitrator decided that "[e]ach party is to bear their own Attorney's fees." Def's Mem., Ex. A at 4. The arbitrator did not explain why he had chosen not to award attorneys fees to either party.

On January 21, 2004, Success moved to reopen this action for purposes of seeking to vacate or modify the arbitrator's decision not to award it any attorneys fees. Success asserts that the arbitrator's decision on this issue manifestly disregarded both the evidence and the law. Success seeks either an award of fees directly from this Court or a remand to the arbitrator so that he can determine an appropriate fee award. With Maddy's consent, this Court granted Success' motion to reopen [doc. # 32] to permit the Court to consider Success' motion to vacate or modify the arbitrator's award.

## II.

Section 10(a) of the FAA authorizes a district court to vacate an arbitration award on only four specific and limited grounds:

(1) where the award was procured by corruption, fraud or undue means;
(2) where there was evident partiality or corruption in the arbitrators, or either of them;
(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). Success does not seek to vacate the arbitrator's decision on the basis of any of the express grounds for vacatur set forth in the FAA.

However, the Second Circuit has long recognized an additional ground for vacatur not set

forth in the FAA: namely, manifest disregard of the law. As recently explained in *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003), the manifest disregard standard finds its roots in "dicta" from *Wilko v. Swan*, 346 U.S. 427 (1953) – a decision later overruled on other grounds in *Rodriquez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477 (1989). From *Wilko*'s dicta, the Second Circuit "inferred that in addition to the statutory grounds set forth in the FAA, an arbitral award may be vacated if manifest disregard of the law is plainly evident from the arbitration award." *Duferco*, 333 F.3d at 388.

      In a series of recent decisions, the Second Circuit has emphasized the "severely limited" nature of the judicially created manifest disregard standard. *Westerbeke Corp. v. Daihatsu Motor Co.,* 304 F.3d 200, 208 (2d Cir. 2002) (quoting *Gov't of India v. Cargill, Inc.*, 867 F.2d 130, 133 (2d Cir. 1989); *see Hoeft v. MVL Group, Inc.*, 343 F.3d 57, 67-68 (2d Cir. 2003) ("Judicial review of an arbitration award for manifest disregard of the law is "severely limited."); *Duferco*, 333 F.3d at 389 ("Our review under the doctrine of manifest disregard is 'severely limited' . . . It is highly deferential to the arbitral award and obtaining judicial relief for the arbitrator's manifest disregard of the law is rare.") (citations omitted); *Postlewaite v. McGraw-Hill*, 333 F.3d 42, 49 (2d Cir. 2003) ("[J]udicial review of arbitration is very limited."); *GMS Group, LLC v. Benderson*, 326 F.3d 75, 77 (2d Cir. 2003) (″We have repeatedly stressed that our review under the doctrine of manifest disregard is 'severely limited.'").[3] Indeed, in *Duferco*, the Second Circuit canvassed its decisions since 1960 and noted that it had "vacated some part or all of an arbitral

---

[3] Though recognizing that the manifest disregard standard is "not an easy standard to meet," a majority in *Hardy v. Walsh Manning Sec., LLC*, 341 F.3d 126, 130 (2d Cir. 2004) recently remanded for clarification of an arbitral award on manifest disregard grounds, though the dissenting judge was of the opinion that the majority had "disregarded the well-settled precedent establishing our severely limited review of arbitration awards." *Id.* at 134.

award for manifest disregard in only four out of at least 48 cases where we applied the standard" and that all but one of the cases finding manifest disregard involved an arbitral decision in which the arbitrators had exceeded their legal powers. *Duferco*, 333 F.3d at 389. The court observed that the Second Circuit's "reluctance over the years to find manifest disregard is a reflection of the fact that it is a doctrine of last resort – its use is limited only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent but where none of the provisions of the FAA apply." *Id*.

### A.

Despite the highly restrictive language that the Second Circuit has chosen to describe its manifest disregard standard and that court's explicit and numerous cautionary remarks about how exceedingly rare it would be for a court to vacate an arbitration award on the basis of that standard, this Court's experience suggests that the manifest disregard standard is, nonetheless, the argument of choice for movants seeking to set aside an arbitration award. Furthermore, movants in several recent cases before this Court have asserted that the Second Circuit actually recognizes two forms of manifest disregard: manifest disregard of the law and manifest disregard of the evidence. The Court disagrees.

Proponents of the manifest disregard of the evidence standard invariably cite *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197 (2d Cir. 1998) as establishing this additional judge-made ground for vacating an arbitral award.[4] While there is certainly language in *Halligan* that one

---

[4] For example, in *Wallace v. Buttar*, 239 F.Supp.2d 388 (S.D.N.Y. 2003), the court stated that in addition to the grounds for vacatur set forth in the FAA, "the Second Circuit [] recognize[s] two additional bases for vacating arbitration awards: manifest disregard of the law and manifest disregard of the facts," citing *Halligan* and two 9th Circuit decisions for the latter proposition. *Id.* at 392-94.

might read as contemplating a manifest disregard of the evidence standard, the Second Circuit's recent decision in *GMS Group* makes it clear that *Halligan* did no such thing.

As an initial matter, *GMS Group* emphasized that *Halligan* was focused on the "unique concerns at issue with employment discrimination claims," concerns that have no application to a case like this, which involves a voluntary agreement between two corporate parties to arbitrate commercial claims. *GMS Group*, 326 F.3d at 79. More importantly, *Halligan* merely applied the Second Circuit's traditional manifest disregard of the law standard. *Id*. (The court's "recitation of the standard of review in *Halligan* mirrored the traditional standard" for manifest disregard of the law.) As *GMS Group* explained, *Halligan* was a case in which there was no dispute regarding the controlling law, no written opinion and no findings of fact. "In light of the fact that the controlling law was undisputed and had been called to the attention of the arbitrators, [the *Halligan* court] could only conclude that [the arbitrators] had disregarded it, as any other explanation would strain credulity given the quantity and quality of [the evidence]." *Id.* (citing *Halligan*, 148 F.3d at 204). Accordingly, *GMS Group* "stress[ed], again," that *Halligan* reached its decision by applying the Second Circuit's traditional manifest disregard of the law standard and not by fashioning an entirely new standard. *GMS Group*, 326 F.3d at 79.

Recognizing manifest disregard of the evidence as a proper ground for disturbing an arbitral award – particularly, as here, in a consensual arbitration between commercial parties – would expand exponentially, and in this Court's view inappropriately, the grounds for vacatur that Congress chose to provide in the FAA. A manifest disregard of the facts standard also would threaten to undermine many of the benefits parties bargain for when they enter into arbitration agreements. For "by agreeing to arbitrate, a party 'trades the procedures and

opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). Indeed, the Supreme Court has repeatedly recognized that avoiding prolonged litigation is "one of the very risks the parties, by contracting for arbitration, s[eek] to eliminate." *Southland Corp. v. Keating*, 465 U.S. 1, 7 (1984); *see Folkways Music Pub., Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993) ("twin goals of arbitration" are "settling disputes efficiently and avoiding long and expensive litigation"). Yet, if manifest disregard of the *evidence* were an available ground for vacatur, courts would inevitably be asked to second-guess the arbitrators' factual decisions and, in effect, to retry the case, thereby depriving the parties of the simplicity for which they bargained. Evaluating evidence remains the exclusive province of arbitrators. *See, e.g., Westerbeke*, 304 F.3d at 213-214 ("The arbitrator's factual findings . . . are not subject to judicial challenge."). Absent fraud, corruption or any of the other circumstances specified in the FAA, the factual determinations of the arbitrators chosen by the parties are simply beyond the purview of the courts. *See ConnTech Dev. Co. v. Univ. of Conn.*, 102 F.3d 677, 687 (2d Cir. 1996) (erroneous factual detrmination is not a ground for vacating an arbitration award); *Siegel v. Titan Indus. Corp.*, 779 F.3d 891, 894 (2d Cir. 1985) ("[T]he fact that an arbitrator erroneously decided the facts" is not a ground for vacating an arbitrator's award.).

   Finally and parenthetically, the Court notes that even if manifest disregard of the evidence were a proper ground for vacating an arbitral award, the Court could not apply such a standard in this case because, as frequently occurs in arbitrations, the parties chose not to incur the expense of having the testimony before the arbitrator transcribed or audio taped. Accordingly, there is no

record of the testimony that was presented to the arbitrators. Furthermore, it is apparent from the parties' submissions that they disagree about the testimony and arguments presented to the arbitrator. *See* Def.'s Mot. to Strike Parts of the Affidavit of Joseph M. Pastore III and Exhibits [doc. #36] and Pl.'s Mem. in Opp'n to Mot. to Strike Affidavit of Joseph M. Pastore III [doc. #41]. Without a record of the proceeding, it would be impossible for this Court to evaluate the evidence or the parties' contentions regarding the record before the arbitrator. As a consequence, for both legal and practical reasons, Success is limited in this proceeding to its claim of manifest disregard of the law.

**B.**

From a series of Second Circuit decisions, one can distill a number of principles that govern a motion to vacate an arbitration award on the ground of manifest disregard of the law. These principles are as follows:

First, the party seeking to overturn the arbitral award bears the burden of demonstrating that the arbitrator manifestly disregarded the law. *See, e.g., GMS Group*, 326 F.3d at 81; *Westerbeke*, 304 F.3d at 208; *Greenberg v. Bear, Stears & Co.*, 220 F.3d 22, 28 (2d Cir. 2000). Furthermore, the showing required to void an arbitration decision on the ground of manifest disregard is quite high. *See Willemijn Houdstermaatschappij, BV v. Standard Microsys. Corp.*, 103 F.3d 9, 12 (2d Cir. 1997).

Second, a movant must establish more than a mistake of law on the arbitrator's part. A mere error of law or the failure of the arbitrators to understand or properly apply the law is insufficient. *Westerbeke*, 304 F.3d at 209 (quoting *Saxis S.S.Co. v. Multifacs Int'l Traders, Inc.*, 375 F.2d 577, 582 (2d Cir. 1967); *see Duferco*, 333 F.3d at 389 (vacatur requires "more than a

simple error in law or a failure by the arbitrators to understand or apply it; and, it is more than an erroneous interpretation of the law"). Thus, in *Duferco*, the court described the required showing as a "clear demonstration that the panel intentionally defied the law," *Duferco*, 333 F.3d at 391, and in *Westerbeke*, 304 F.3d at 217, the court stated that a movant must demonstrate that the arbitrator "wilfully flouted the governing law by refusing to apply it."

Third, to make such a showing, the movant must satisfy a two-pronged test that has both an objective and a subjective component. Both prongs must be satisfied before a court may find a manifest disregard of the law. *See Westerbeke*, 304 F.3d at 209.

The objective component requires the movant to demonstrate that the "governing law alleged to have been ignored by the arbitrators [was] well-defined, explicit, and clearly applicable." *Westerbeke*, 304 F.3d at 209 (quoting *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir. 1986); *see Hoeft*, 343 F.3d at 70 (the governing law must be "sufficiently well-defined, explicit and clearly applicable to satisfy the manifest disregard standard"). "As long as there is more than one reasonable interpretation of the governing law, the law is not well-defined, explicit, and clearly applicable, and an arbitrator cannot be said to have manifestly disregarded the law in rejecting either party's interpretation." *Hoeft,* 343 F.3d at 71; *see Duferco*, 333 F.3d at 390 ("Misapplication of an ambiguous law does not constitute manifest disregard.").[5]

The subjective component of the test looks to the knowledge actually possessed by the

---

[5] Thus, where parties in an arbitration submitted conflicting expert opinion regarding application of NASD rules or GAAP principles, the Second Circuit held that, by definition, the law as applied to the facts was not so clear, well-defined and established to satisfy the objective prong of the manifest disregard test. *See Hoeft*, 343 F.3d at 71; *GMS Group,* 326 F.3d at 82-83.

arbitrators and requires the movant to demonstrate that the arbitrator was aware of the existence of the clear legal principle and appreciated that it governed the case but nonetheless decided to ignore, or rule in defiance of, that clear governing legal principle. *See Westerbeke*, 304 F.3d at 209. In assessing this prong of the test, courts should assume that the arbitrator is "a blank slate unless educated in the law by the parties." *Goldman v. Architectural Iron Co.*, 306 F.3d 1214, 1216 (2d Cir. 2002); *accord*, *GMS Group*, 326 F.3d at 81. Since arbitrators frequently are laymen and not lawyers, ordinarily this means that "[i]n determining an arbitrator's awareness of the law, [courts should] impute only knowledge of governing law identified by the parties to the arbitration. *Duferco*, 333 F.3d at 390; *see DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 823 (2d Cir. 1997). If the parties did not explicitly bring governing law to the arbitrators' attention, a court may knowledge and intentional conduct on the part of an arbitrator only if a court finds the legal error "so obvious that it would be instantly perceived as such by the average person qualified to serve as an arbitrator." *Duferco*, 333 F.3d at 390; *see Westerbeke*, 304 F.3d at 209; *Merrill Lynch*, 808 F.2d at 933.

  Fourth and finally, underscoring that manifest disregard is about defiance or wilful flouting of the law and not about mere legal errors, the Second Circuit has made it clear that a court must uphold an arbitrator's award against a manifest disregard challenge so long as the court can glean "even a barely colorable justification" for the award from the record. *See Standard Microsys.*, 103 F.3d at 13; *accord, Duferco*, 333 F.3d at 390 (all that is required to save an arbitral award is a "barely colorable justification"); *Westerbeke*, 304 F.3d at 218 (a justification that is "at least slightly colorable [] is all that is required given the strong presumption that the arbitrator has not acted in manifest disregard of the law"). And that is true

even if the reasoning underlying that barely colorable justification would itself reflect an error of fact or law. *Duferco*, 333 F.3d at 390 ("Even where explanation for an award is deficient or non-existent, we will confirm it if a justifiable ground for the decision can be inferred from the facts of the case."); *GMS Group*, 326 F.3d at 78 (The court "will confirm the award if we are able to discern any colorable justification for the arbitrator's judgment, even if that reasoning would be based on an error of fact or law.") (internal quotations omitted); *Goldman*, 306 F.3d at 1217 (Even if arbitrator erred in applying governing law, the tribunal cannot be said to have "exhibited a manifest disregard of the law.") .

In view of the stringent nature of these governing principles, it is hardly surprising that the Second Circuit has repeatedly emphasized the truly formidable burdens facing a party who wishes to challenge an arbitral award on manifest disregard of the law grounds. *See, e.g., Hoeft*, 343 F.3d at 69; *Duferco*, 333 F.3d at 393; *GMS Group*, 326 F.3d at 77-78; *Westerbeke*, 304 F.3d at 208-209.

### III.

The clear and governing legal principle that Success claims the arbitrator violated in this case is the proposition that "a court has no authority to disregard a contractual provision for attorneys fees, and must limit its determination to the reasonableness of the amount requested." *Alpine Constr., Inc. v. McGill-Membrino*, No. CV-91-0105970, 199 Conn. Super. LEXIS 1137, at *4 (Conn. Super. Ct. Apr. 27, 1992) (citing *Pacelli Bros Trans., Inc. v. Pacelli,* 189 Conn. 401, 415 (1983)); *see* Pl's Mem. in Supp. of Mot. to Vacate and/or Modify AAA Arbitration Award [doc. #34] ("Pl's Mem.") at *9 (also citing *United States v. 414 Kings Highway,* No. 5:91-CV-158, 1999 U.S. Dist. LEXIS 10522, at *16 (D. Conn. May 10,1999). Success points to

two provisions of the parties' Distribution Agreement that required the arbitrator to award Success its legal fees. Section 20 states that Maddy "shall indemnify [Success] in full for any cost, liability, or harm suffered by [Success], including reasonable attorneys fees, as a direct or indirect result of Distributor's breach of any of the terms of this Agreement . . . " Def's Mem., Ex. B. Section 17 provides that if Success has "any basis to seek" legal or equitable relief to restrain or remedy of violation of the confidentiality provisions of the agreement, Maddy "shall pay any and all attorney fees and court costs that [Success] may incur" in bringing such an action. *Id.* Success argues that when the arbitrator concluded that Maddy owed Success $10,000 under the Distribution Agreement, section 20 was triggered because that conclusion meant that Maddy had breached the parties' contract. Success also contends that it is entitled to attorneys fees under section 17 because it is undisputed that Maddy failed to return certain confidential information to Success until Success was forced to sue Maddy in this action for legal and injunctive relief. According to Success, the arbitrator's refusal to award Success legal fees under either section 17 or section 20 reflects a manifest disregard of the law. The Court disagrees.

   First, in assessing the objective prong of the manifest disregard test, the Court is willing to assume for present purposes that Success has established the existence of a clear legal principle – namely, that under Connecticut law, an arbitrator must award attorneys fees if required to do so by the express terms of the parties' contract. But Success must do more than establish the existence of a legal principle. Success must also show that it clearly applies to the facts of this case as found by the arbitrator. *See Westerbeke*, 304 F.3d at 212 ("Under the manifest disregard standard . . . the governing law must clearly apply to the facts of the case, *as those facts have been determined by the arbitrator*.") (emphasis in the original). Success has not

done so.

     Maddy plausibly argued to both this Court and to the arbitrator in its briefs that section 17 has no application to this case for several reasons. For one, the language of the provision suggests recovery of attorneys fees in a court action, not an arbitration. While Success sought to recover the legal fees it had incurred in bringing this federal lawsuit, Success' lawyer conceded that most of those fees were incurred to respond to Maddy's motion to stay or dismiss the case in favor of arbitration, a point on which Success ultimately relented by agreeing to submit its claims to arbitration. There is no clear basis in section 17 for recovery of fees incurred to defend against a motion to move the case to arbitration under the FAA and the parties' agreement, particularly when Success did not prevail on that issue. Furthermore, the arbitrator found that Maddy did not violate the confidentiality provisions of the parties' agreement, which would appear to be a prerequisite to any award of fees under section 17. *See* Def's Mem., Ex. A, at 4 ("[Success] failed to prove that the claimant disclosed or failed to maintain in confidence any such [confidential] material."). While Success argues that Maddy admitted to withholding certain confidential materials, thereby warranting a fee award under section 17, the arbitrator made no such finding. In fact, the arbitrator found that Maddy returned whatever material was in its possession in April 2001. *See* Def's Mem., Ex. A at 4. That was months before Success filed this action in federal court. The Court is not at liberty to ignore the arbitrator's factual findings. *See Westerbeke*, 304 F.3d at 20.[6]

---

[6] At argument, Success's counsel asserted that the arbitrator must have meant April 2002, not April 2001. However, Success never asked the arbitrator to correct its award and such an error, if error it is, is hardly clerical in nature. Maddy's counsel would not agree that the arbitrator had erred in any way and the Court is therefore required to accept the facts as the arbitrator found them, as set forth in his award.

Section 20 appears on its face to be more promising for Success, but Success has also failed to show that the terms of that section expressly required the arbitrator to award attorneys fees in the circumstances of this case. As Maddy points out, section 16 of the Distribution Agreement incorporates the AAA rules and regulations and those rules permit, but do not require, the arbitrator to award attorneys fees "if all parties have requested such an award or it is authorized by law or their arbitration agreement." AAA Commercial Arbitration Rule 43. While it may be that section 16 of the Distribution Agreement, and the AAA rule incorporated by it, are trumped by the mandatory language of section 20, Success has not cited any decisional law that required the arbitrator to reach such a conclusion. *See Westerbeke*, 304 F.3d at 214 (the arbitrator's "contractual interpretations are not subject to judicial challenge") (citing *Yusuf Ahmed Alghanim & Sons v. Toys 'R' Us, Inc.*, 126 F.3d 15, 25 (2d Cir. 1997) ("Interpretation of [a] contract term [ ] is within the province of the arbitrator.")). Furthermore, it is undisputed that, with one exception, Success did not prevail on any of the numerous claims it asserted in the arbitration, recovering only $10,000 of the approximately $900,000 it sought in the arbitration. However, the only fee request Success tendered to the arbitrator sought a fee award of $132,000. While Success asserted at argument that the arbitrator was required by governing law to sort through Success' legal bills and decide which fees were allocable to the claim for $10,000 on which it prevailed, Success has not cited any Connecticut case that imposes such an obligation on an arbitrator or a court. Accordingly, Success has failed to establish that the law that was allegedly ignored was clearly applicable in the circumstances of this case. *See Hoeft*, 343 F.3d at 71; *GMS Group*, 326 F.3d at 82-83.

Second, Success has also failed to satisfy the subjective prong of the manifest disregard

test. Success's counsel acknowledged at argument that he never brought any of the supposedly governing Connecticut case law to the attention of the arbitrator. A review of Success's pre- and post-hearing briefs confirms this. *See* Pl.'s Mem. of Law in Supp. of Mot. to Vacate and/or Modify AAA Arbitration Award [doc. #34], at 13-14; Pl.'s Reply Mem. in Supp. of Mot. to Vacate and/or Modify AAA Arbitration Award [doc. #39], at 8-9. Success did repeatedly assert that the arbitrator was required to award it fees under sections 17 and 20 of the Distribution Agreement. Pl.'s Reply Mem. in Supp. of Mot. to Vacate and/or Modify AAA Arbitration Award [doc. #39], at 8-9. Based on this, Success argues that the requirement to award legal fees would be "so obvious that it would be instantly perceived as such by an average person qualified to serve as an arbitrator." *Duferco*, 333 F.3d at 390.

The Court disagrees. For the reasons stated previously, it is not "so obvious" that Connecticut law would require the arbitrator to award Success its legal fees in the circumstances of this case. Indeed, Maddy made plausible arguments to the arbitrator that he was not obligated to award Success its legal fees, even if Success prevailed on its claims. In light of Maddy's arguments, it was incumbent on Success to cite to the arbitrator any relevant and governing legal authority that obligated him to award Success its fees.[7] *See DiRussa*, 121 F.3d at 822-24 (rejecting movant's claim that it is so obvious that attorneys fees are required under ADEA that movant was not required to bring applicable law to the attention of the arbitrators). The Court can hardly find that the arbitrator ignored or defied applicable law if that law was never brought

---

[7] Furthermore, while Success did repeatedly demand an award of fees on its claim that Maddy had breached the confidentiality provisions of the Distribution Agreement (a claim the arbitrator rejected), never once in its legal briefs did Success state that if it prevailed on only its claim for $10,000 under the Distribution Agreement, the arbitrator would still be required to award Success its legal fees.

to the arbitrator's attention.  In short, Success has failed to show that the arbitrator clearly understood his legal obligation to award fees to Success and that he intended to flout or defy that law in ruling that each party should bear their own legal fees.

Finally, at a minimum, there is "a barely colorable basis" for the arbitrator's decision not to award fees to Success, and that is all that is required to save the award.  As described above, the provisions of the Distribution Agreement do not necessarily require an award of fees under the facts as found by the arbitrator.  Moreover, in view of the fact that Success was awarded only $10,000 of the approximately $900,000 it had requested, the arbitrator may well have concluded that neither party was sufficiently successful to deserve an award of attorneys fees, or that Success' undifferentiated request for a fee award of $132,000 was unreasonable.  In any of those circumstances, the arbitrator may plausibly have believed that he was well within his legal authority to leave both parties to bear their own legal expenses.  As discussed previously, even if that belief was erroneous as a matter of law, that still would not permit this Court to substitute its judgment for that of the arbitrator chosen by the parties.  Only "a clear demonstration that the [arbitrator] intentionally defied the law," would allow this Court to vacate or modify the arbitrator's award.  *Duferco*, 333 F.3d at 393.  And for the reasons stated, Success has failed to satisfy that very high standard.

## IV.

Accordingly, Plaintiff's Motion to Vacate or Modify AAA Arbitration Award [doc. #33] is DENIED.  The Clerk is directed to enter Judgment for the Defendant and to close this file.

IT IS SO ORDERED.


/s/   <u>     Mark R. Kravitz     </u>
              U.S.D.J.


Dated at New Haven, Connecticut: <u>May 3, 2004</u>